In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00029-CV


______________________________





IN THE MATTER OF


LISSA EPPERSON AND HARRY HICKMAN





 


On Appeal from the 307th Judicial District Court


Gregg County, Texas


Trial Court No. 2005-2265-DR




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Moseley



O P I N I O N



 This is an appeal from the trial court's granting of a protective order against Harry Hickman
on the application of his former fiancé, Lissa Epperson. In his sole point of error, Hickman contends
that there is legally insufficient evidence to support the trial court's finding that family violence is
likely to occur in the future. Concluding the contrary, we affirm the trial court's order.

I. APPLICABLE LAW

 A. Protective Orders and Family Violence

 A trial court shall render a protective order if the court finds that family violence (1) has
occurred and (2) is likely to occur in the future. Tex. Fam. Code Ann. § 81.001 (Vernon 2002). 
"At the close of a hearing on an application for a protective order, the court shall find whether: 
(1) family violence occurred; and (2) family violence is likely to occur in the future." Tex. Fam.
Code Ann. § 85.001(a) (Vernon 2002).

 "Family violence" is "an act by a member of a family or household (1) against another member
of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual
assault or that is a threat that reasonably places the member in fear of imminent physical harm,
bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself." 
Tex. Fam. Code Ann. § 71.004(1) (Vernon 2002).

 B. Standard of Review

 This Court has held that, because a protective order provides injunctive relief, we should
apply the standard of review that is consistently applied to review of injunctions. (2) Thompson v.
Thompson-O'Rear, No. 06-03-00129-CV, 2004 Tex. App. LEXIS 5033, at *4 (Tex.
App.--Texarkana June 8, 2004, no pet.) (mem. op.). Therefore, we review the granting or denial
of a permanent injunction for an abuse of discretion. See Operation Rescue-Nat'l v. Planned
Parenthood of Houston and Se. Tex., Inc., 975 S.W.2d 546, 560 (Tex. 1998); Chromalloy Gas
Turbine Corp. v. United Techs. Corp., 9 S.W.3d 324, 328 (Tex. App.--San Antonio 1999, pet.
denied). A trial court abuses its discretion if it acts without reference to any guiding rules and
principles or reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial
error of law. See Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).

II. ANALYSIS

 Again, Hickman limits his point of error to the evidence supporting the trial court's finding
that family violence is likely to occur in the future. He does not challenge any other of the trial
court's findings. We, then, look to the evidence relevant to the finding that Hickman will likely
commit family violence in the future.

 After having dated several months and moved in together, one evening Epperson and
Hickman became involved in a verbal confrontation which soon escalated into a physical altercation
in which Hickman grabbed Epperson by her robe, shoved his fist in her throat, and attempted to push
her face into the cement steps. The day after this violent episode, Epperson moved out of the house
with the hope that, perhaps, Hickman could change and that the couple could possibly work out the
problems in their relationship. However, while Hickman did send cards expressing his desire to
reconcile and declaring his love for Epperson, he also began delivering bizarre, sometimes
threatening notes to Epperson. On one instance, while Epperson was staying with a friend, Hickman
apparently came by during the night, pried down Epperson's car window, and left several letters and
photographs in her car with a variety of messages on them. 

 Most pertinent to the trial court's finding that family violence would likely occur in the future
is the nature of the notes and pictures that Hickman delivered to Epperson. For instance, on one of
the photographs Hickman left in her car, he threatened that one of Hickman's friends "has gotten
wind of this, and I promise it won't be pretty." Taken in conjunction with another photograph of
Epperson in which Hickman drew or smeared what appeared to be blood over what Hickman called
her "[l]ying eyes," this evidence suggests that Hickman would continue to commit acts of family
violence or make threats that reasonably placed Epperson in fear of physical harm, bodily injury,
assault, or sexual assault. On that same photograph, Hickman continued: "That woman has put a
spell on you. I'm talking to Brad [husband of Epperson's friend] today." 

 When we consider this behavior in light of Hickman's past (3) and continuing pattern of
behavior, we conclude that the evidence is such that Epperson was reasonable in fearing that
Hickman would commit acts of family violence. Epperson testified that, during the relationship,
Hickman was "controlling and threatening." She also testified to another instance of physical
violence between the two of them in which Hickman shoved an ashtray into her chest. (4) Oftentimes,
past is prologue; therefore, past violent conduct can be competent evidence which is legally and
factually sufficient to sustain the award of a protective order. In re T.L.S., 170 S.W.3d 164 (Tex.
App.--Waco 2005, no pet.). 

 Between the time Epperson moved out of Hickman's home until the date of the hearing on
Epperson's application, Hickman demonstrated possibly threatening and strange behavior in order,
apparently, to gain the attention of Epperson. According to Epperson, Hickman often came to her
workplace to leave her notes, cards, and/or photographs. Epperson also testified that Hickman began
calling her workplace, posed as Epperson's brother so that she would come to the telephone, and,
when she discovered it was Hickman instead, he threatened to come down there if she hung up the
telephone. Epperson described another strange telephone call in which Hickman spoke to Epperson's
friend while impersonating a deputy sheriff, attempting to convince Epperson that Hickman had
committed suicide. Finally, approximately two weeks before the hearing on Epperson's application,
Lake Cherokee authorities discovered Hickman hiding underneath a trailer on the property behind
the house at which Epperson had been staying. 

 Epperson testified that she perceived Hickman's messages and behavior as "[v]ery
threatening" and "bizarre." She also testified that she was fearful of Hickman. While his notes do
not explicitly describe what act(s) Hickman might threaten to commit, the tone of the notes, the
promise that "it won't be pretty," and the reddish substance (either blood or a representation of blood)
smeared on Epperson's photograph all lead to the conclusion that Epperson was reasonable in fearing
future acts of family violence. Based on the future tense used in the notes and Hickman's continuing
pattern of threatening behavior, it was reasonable for the trial court to conclude that Hickman would
commit or, at a minimum, would threaten to commit acts constituting family violence.

III. CONCLUSION

 Based on our evaluation of the record, the trial court did not abuse its discretion by granting
Epperson's application for a protective order since the evidence supported the trial court's finding
that family violence was likely to occur in the future. We overrule Hickman's sole point of error and
affirm the trial court's protective order.




 Bailey C. Moseley

 Justice


Date Submitted: December 5, 2006

Date Decided: January 18, 2007



1. The Texas Family Code defines a "household" as "a unit composed of persons living
together in the same dwelling, without regard to whether they are related to each other." Tex. Fam.
Code Ann. § 71.005 (Vernon 2002).
2. The intermediate courts of appeals disagree as to the standard of review to be applied. See
Thompson, 2004 Tex. App. LEXIS 5033, at *4 (applying abuse of discretion standard of review);
Ulmer v. Ulmer, 130 S.W.3d 294 (Tex. App.--Houston [14th Dist.] 2004, no pet.) (recognizing that
protective order provides injunctive relief, but later applying the standard legal and factual
sufficiency review); Pena v. Garza, 61 S.W.3d 529, 532 (Tex. App.--San Antonio 2001, no pet.)
(applying legal and factual sufficiency standards of review).
3. We do note that, under certain circumstances, evidence of a long-standing history of family
violence may alone be sufficient to show that family violence is likely to occur in the future. See In
re M.G.M., 163 S.W.3d 191, 202 (Tex. App.--Beaumont 2005, no pet.). In M.G.M., the record
demonstrated a seven-year history of family violence by the husband directed at his wife and their
child. Id. This history of physical, mental, and emotional abuse was sufficient evidence of the
likelihood of future family violence. Id.
4. The record demonstrates that the relationship may have been mutually violent. Epperson
admitted that she "smacked [Hickman] across the face." However, this evidence is not relevant to
our inquiry into whether the evidence sufficiently shows that Hickman is likely to commit family
violence in the future.