In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00049-CV


______________________________




CITY OF RENO, TEXAS, Appellant



V.



TODD STEPHENS D/B/A STEPHENS AND SONS, Appellee




 


On Appeal from the 62nd Judicial District Court


Lamar County, Texas


Trial Court No. 75652




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



 

MEMORANDUM OPINION



 Todd Stephens, individually and doing business as Stephens and Sons, was conducting a
business within the corporate limits of the City of Reno, Texas, wherein he was removing dirt from
the premises and transporting it elsewhere. The City obtained a temporary restraining order to
prohibit this practice on the basis that the operation was in violation of a city ordinance.

 The City then filed a motion for summary judgment and the trial court denied that motion. 
The City has filed an appeal from that order. In an unusual twist for such an order, the trial court
denied the City's motion for summary judgment, but then made findings of fact and conclusions of
law on the issues that had been raised by Stephens's pleadings, finding in favor of Stephens on all
grounds. The case involved the application of a city ordinance to Stephens's business, and whether
the operation of the business as a nonconforming use (1) was permitted to continue in operation of that
use.

 The first question which we must examine is whether we have jurisdiction over this appeal. (2) 
It is axiomatic that a party cannot appeal from a denial of a motion for summary judgment because
it is interlocutory and, therefore, not appealable. Humphreys v. Caldwell, 888 S.W.2d 469, 470 (Tex.
1994); Novak v. Stevens, 596 S.W.2d 848, 849 (Tex. 1980). The complained-of order contains no
language indicating finality and the reporter's record contains no evidence at all. Rather, the hearing
consisted entirely of argument by counsel about the viability of the City's motion for summary
judgment and regarding Stephens's counterclaims for damages against the City. (3) Although we
recognize an exception to the general rule on finality applies when both parties file motions for
summary judgment and the court grants one and overrules the other, Tobin v. Garcia, 159 Tex. 58,
316 S.W.2d 396, 400 (1958), in this case Stephens filed no motion for summary judgment. Thus,
this exception does not apply. (4)

 There are no indicia of finality within the order refusing the motion for summary judgment
and there are no indications that this could possibly have constituted a trial on the merits.

 There is a suggestion that because the relief sought in the summary judgment was the
issuance of a permanent injunction, the denial of that relief is appealable. A final judgment granting
or denying a permanent injunction is an appealable order and would be reviewed by this Court under
an abuse of discretion standard. See Operation Rescue-Nat'l v. Planned Parenthood of Houston &
Se. Tex., Inc., 975 S.W.2d 546, 560 (Tex. 1998); In re Epperson, 213 S.W.3d 541, 542-43 (Tex.
App.--Texarkana 2007, no pet.).

 However, the order denying the motion for summary judgment does not specifically deny the
issuance of an injunction and, because it does not finally dispose of the issues involved, it is not a
final judgment. What the court denied was a motion claiming that the party was entitled to summary
relief as a matter of law. With the exception of the limited circumstances mentioned above, the
denial of such relief pursuant to a motion for summary judgment does not create a final, appealable
judgment. It leaves the matter before the court, to be determined by trial on the merits.

 Thus, unless the order is in some fashion appealable despite not being final, we have no
jurisdiction over the appeal. Our jurisdiction over interlocutory appeals is limited to those matters
allowed by statute. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014 (Vernon Supp. 2007). Had
this been an appeal from the denial of a plea to the jurisdiction by the governmental unit, it would
be appealable. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8). Had this been a denial of a
request for a temporary injunction, it would be appealable. Tex. Civ. Prac. & Rem. Code Ann.
§ 51.014(a)(4). This is neither. 

 The motion for summary judgment acknowledges that the City had previously been granted
a temporary restraining order following a hearing and states that the City had filed an amended
motion thereafter seeking another temporary restraining order and a temporary injunction. That
petition also sought a permanent injunction against Stephens. 

 After mentioning that petition, however, the City's motion for summary judgment thereafter
states in the following language that through this motion for summary judgment, it is seeking a
permanent injunction.

 Movant prays that:

 Judgment is rendered against defendant, Todd Stephens d/b/a Stephens and
Sons for a permanent injunction.


 The Court set this matter for hearing, with notice to Non-Movant, and that
upon completion of said hearing the Court grants Movant's Motion for Summary
Judgment, and that Movant has the following:


 1. Judgment against Defendant Todd Stephens DBA Stephens and Sons, fora
[sic] permanent injunction, or alternatively, should the Court find some facts to be
controverted, Movant be granted a partial summary judgment specifying those facts
that appear to be without substantial controversy; . . . .


 At no point in its motion does the City ask the trial court to consider, address, or render a
summary judgment involving a temporary injunction. The order denying the motion for summary
judgment is not such a ruling. (5)

 Accordingly, we must conclude that this ruling is not appealable, and the City has thus not
invoked the jurisdiction of this Court. We dismiss the appeal for want of jurisdiction.




 Bailey C. Moseley

 Justice


Date Submitted: June 17, 2008

Date Decided: June 18, 2008

1. A nonconforming use is "one that lawfully existed before the effective date of a zoning
restriction and that is allowed to continue to exist in nonconformance with the restriction." Bd. of
Adjustment of City of San Antonio v. Wende, 92 S.W.3d 424, 429 (Tex. 2002).
2. When the record in this case was originally presented for filing, we contacted the parties and
warned them of the potential defect in appellate jurisdiction, but because of the lack of clarity in the
record before us, we chose not to address that issue until after receiving briefing from the parties.
3. Although the City filed a pleading raising sovereign immunity in avoidance of that claim,
there is no ruling on that matter, it was not mentioned in the City's motion for summary judgment,
and Stephens nonsuited the claims against the City.
4. Compare Tex. Health Care Information Council v. Seton Health Plan, Inc., 94 S.W.3d 841,
851 (Tex. App.--Austin 2002, pet. denied) (reviewing denial of motion for summary judgment
seeking issuance of a permanent injunction, based upon the cross-motion filed by the opposing
party).

5. We do not mean to suggest that a denial of a summary judgment which has the effect of
denying a request for issuance of a temporary injunction--but based only on summary judgment
proof--is appealable. That question is not before us.


uncan's right to appeal would be extremely limited, and that it was still not too late to honor the
plea bargain agreement if he chose to do so. Following this litany, Duncan requested the opportunity
to once again visit with his family and Sanders concerning his course of action. The trial court
granted the request and the hearing was recessed. Upon resumption of the hearing, Duncan reiterated
his desire to repudiate the plea bargain agreement and enter an open plea to the trial court. 

 Although their stories as related at the hearing on the motion for new trial vary widely as to
the advice that was given by Sanders to Duncan, it appears undisputed that when Sanders first
appeared in court with Duncan, he was unaware that Duncan (somehow convinced by others that he
would receive leniency from the trial court and would be reinstated on community supervision) had
finally determined to repudiate the plea bargain agreement. 

 Duncan now claims that he had witnesses ready and willing to testify in an effort to mitigate
the sentences. Potential witnesses testified at the motion for new trial.

 One of the witnesses was Duncan's mother, Onabeth Boswell, who indicated that she was
present at the sentencing hearing and that she was aware that there was a possibility that she might
be called as a witness at that time. She indicated that had she been called, she would have testified
"positively" for her son. 

 Another witness was Martha Sabo, who identified herself as a friend of Boswell from the
time they were both eleven years old and who had known Duncan since he was a baby. Sabo
testified that she was retired from the Department of Health and Human Services of the State of
Florida, where she had worked in a specialized unit which dealt with abused children. (3) She had
prepared a report she wanted to present to the trial court in which she concluded that Duncan 
"presents no danger to any children, has a stable family, and works for the same employer for whom
he has worked for several years." 

 Duncan proffered the testimony of Peggy Thomas, Boswell's best friend for many years. 
Thomas said that had she been called as a witness, she would have had "positive" things to say about
Duncan. She did admit that she had never had the opportunity to visit an adult book store (one of
the places Duncan was alleged to have gone in violation of the terms of his community supervision);
therefore, she would have had no opportunity to observe Duncan there.

 Finally, during Duncan's testimony, he testified generally that although he had done things
which were technical violations of some of the terms of his community supervision, those violations
were one-time affairs of minor or inadvertent occasion, none of which (he believed) justified the
revocation of his community supervision. He could also have provided some of the reasoning which
prompted his insistence on the withdrawal of his plea bargain agreement. 

 Overall, Duncan complains that Sanders provided ineffective counsel in neither presenting
arguments nor evidence to diminish the impact of the plea of true to the violations of the terms of
community supervision or to have requested a continuance to be able to provide some kind of
defense. Although there were references to other potential witnesses (the content of their possible
testimony not having been developed by Duncan) during the motion for new trial, other than these
witnesses, there was no proffer of testimony of earth-shaking dimensions and none of the evidence
was particularly persuasive. Although Duncan now asserts that the failure to call these witnesses or
others was an example of ineffective assistance of counsel, absent a showing that witnesses were
available whose testimony would have helped the defense, a claim of ineffective assistance of
counsel cannot be sustained on that basis. Wilkerson v. State, 726 S.W.2d 542, 551 (Tex. Crim. App.
1986). We conclude that Duncan has not shown the existence of witnesses whose testimony would
have had any substantial impact on the outcome of the trial. Some weeks intervened between the
date Duncan was sentenced and the date of the hearing on the motion for new trial; one would
presume that if the new counsel representing Duncan at the hearing on the motion for new trial had
been able to locate persuasive witnesses whose testimony would have made a difference in the
outcome, those witnesses would have testified at that later hearing. If there were no witnesses who
could be called to change the outcome, then a motion by Sanders for a continuance would have borne
no fruit for Duncan. 

 It is further alleged by Duncan that Sanders was ineffective for not having lodged an
objection to the alleged disproportionality of the sentence at the time it was announced by the judge. 
Sanders characterized this as being the "epitome of pointlessness" at the hearing on the motion for
new trial. Sanders had been practicing criminal law for many years; he was familiar with the courts
in Wichita County. From the standpoint of convincing the sentencing judge to lower the sentence,
such an objection may well have been deemed by Sanders to have been pointless. However, that is
not the sole reason for lodging such an objection; preservation of error is another. Such an objection,
if timely lodged, can preserve error. However, this is not the sole means by which such an error can
be preserved; the filing and prosecution of a proper motion for new trial can serve the same purpose.
Williamson v. State, 175 S.W.3d 522, 523-24 (Tex. App.--Texarkana 2005, no pet.). That having
been attempted by other counsel, any error of the trial court in imposing cruel and unusual
punishment or in disproportionate sentencing has been preserved as fully as if there were an
objection at the time of sentencing and Duncan has suffered no harm. 

 Rule 1.02 of the Texas Rules of Professional Conduct prescribes that an attorney "shall abide
by a client's decisions." Tex. Disciplinary R. Prof'l Conduct 1.02, reprinted in Tex. Gov't
Code Ann. tit. 2, subtit. G app. A (Vernon 2005) (Tex. State Bar R. art. X, § 9). From all of the
rather extensive evidence presented at the hearing on the motion for new trial, it appears that Duncan
chose his own course of action--against the advice of Sanders. Now, facing the consequences of
his failure to follow the advice of counsel, Duncan is attempting to place the onus for those decisions
on his attorney. Duncan has failed to show that Sanders provided ineffective assistance of counsel
at trial. 

 We overrule this point of appeal.

DISPROPORTIONATE SENTENCING

 On appeal, Duncan contends the sentence imposed by the trial court was disproportionate to
the offense, citing Solem v. Helm, 463 U.S. 277 (1983).

 Texas courts have traditionally held that as long as the punishment assessed is within the
range prescribed by the Legislature in a valid statute, the punishment is not excessive, cruel, or
unusual. See, e.g., Jordan v. State, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973). Here, Duncan's
sentence falls within the applicable range of two years to ten years. See Tex. Penal Code Ann.
§ 12.34 (Vernon 2003); when there are multiple charges arising out of the same incident, the
sentences can be made to run consecutively. See Tex. Penal Code Ann. § 3.03(b)(2)(A) (Vernon
Supp. 2006).

 That does not end the inquiry. A prohibition against grossly disproportionate punishment
survives under the Eighth Amendment to the United States Constitution apart from any consideration
of whether the punishment assessed is within the range established by the Legislature. U.S. Const.
amend. VIII; see Solem, 463 U.S. at 290; Harmelin v. Michigan, 501 U.S. 957 (1991) (Scalia, J.,
plurality op.); Jackson v. State, 989 S.W.2d 842, 845 (Tex. App.--Texarkana 1999, no pet.); Lackey
v. State, 881 S.W.2d 418, 420-21 (Tex. App.--Dallas 1994, pet. ref'd); see also Ex parte Chavez,
213 S.W.3d 320, 323-24 (Tex. Crim. App. 2006) (describing this principle involving a "very limited,
'exceedingly rare,' and somewhat amorphous" review). 

 Solem had suggested, as a three-part test, that an appellate court consider: (1) the gravity of
the offense compared with the harshness of the penalty; (2) the sentences imposed for similar crimes 
in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other
jurisdictions. See Solem, 463 U.S. at 292. Harmelin at least raised questions about the viability of
the Solem three-part test. In fact, it was subsequently held that proportionality survived Harmelin,
but that the Solem three-part test did not. See McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir.
1992); Lackey, 881 S.W.2d at 420-21. In light of Harmelin, the test has been reformulated as an
initial threshold comparison of the gravity of the offense with the severity of the sentence, and then,
only if that initial comparison created an inference that the sentence was grossly disproportionate to
the offense should there be a consideration of the other two Solem factors--(1) sentences for similar
crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions. 
McGruder, 954 F.2d at 316; Mullins v. State, 208 S.W.3d 469, 470 (Tex. App.--Texarkana 2006,
no pet.); Lackey, 881 S.W.2d at 420-21.

 As a prerequisite to presenting a complaint for appellate review, the record must show that
the complaint was made to the trial court and that the trial court either ruled or refused to rule on that
complaint. Tex. R. App. P. 33.1(a). The complaint must be sufficiently specific to make the trial
court aware of the grounds of the complaint. Tucker v. State, 990 S.W.2d 261, 262 (Tex. Crim. App.
1999). 

 Duncan did file a motion for new trial. In that motion, he did call to the attention of the court
that he challenged the proportionality of the sentence received by him, specifically alleging that the
statutory scheme which permits a violation of Section 21.11(a)(1) of the Texas Penal Code (i.e., a
case of indecent exposure wherein the victim is a child less than seventeen years of age) to be made
to run consecutively pursuant to Section 3.03(b)(2)(A) of the Texas Penal Code, creates a violation
of the prohibition against cruel and unusual punishment as proscribed by the Eighth Amendment of
the United States Constitution and also barred by Article 1, Section 13 of the Texas Constitution. 
He claims the penalty which he was assessed is grossly disproportionate to the conduct which
precipitated the charge.

 The maximum sentence which could have been imposed on Duncan for having exposed
himself to five children less than seventeen years of age could have been as much as fifty years'
confinement (i.e., five counts times ten years--to run consecutively). Duncan received a sentence
of twenty-four years' imprisonment (three sentences of eight years, each to run consecutively, and
two sentences of eight years to run concurrently with the first sentence). Therefore, the sentence
received by Duncan--less than half of its potential--was well within the statutory parameters. 
However, Duncan's complaint is that the statutory scheme itself which allows such a sentence (and
its application to Duncan) is the combination which permits disproportionate sentencing.

 In an effort to comply with the second and third prongs of the tests in Solem and Harmelin,
Duncan has harvested and provided us with what he represents to be the statutes of each of our forty-nine sister states which would be the equivalents or rough equivalents of Texas' indecent exposure
statute involving juveniles as victims. See Tex. Penal Code Ann. § 21.11(a)(1). It is pointed out
in Duncan's brief that only Florida (15 years), Louisiana (25 years), and Oklahoma (20 years) have
statutes which impose penalties which are more severe than Texas. It is difficult to determine from
that which was provided and without extremely extensive research to determine the impact which
the ability to "stack" sentences would have on the potential penalty range of those states, or even if
any such ability exists in the many other jurisdictions. (4) However, the range of statutory penalties of
the various states is not one of the measures under the three-pronged test mentioned in Solem and
Harmelin; the test, rather, is the range of sentences which are assessed. Except for the ability to
extrapolate what might potentially be assessed under the various statutes, no proof of the sentences
has been provided.

 Duncan cites one unreported case from the Dallas court of appeals for the proposition that
his sentence exceeds sentences for similar crimes within the State of Texas, (Barrientos v. State,
Nos. 05-06-00675-CR & 05-06-00676-CR, 2007 Tex. App. LEXIS 3945 (Tex. App.--Dallas
May 23, 2007, no pet. h.), in which the defendant received a sentence of only four years for a similar
crime. The adage is, "One snowflake does not a winter make." Likewise, one case does not
demonstrate the sentences imposed for similar crimes in the same jurisdiction; the case cited by
Duncan could be an isolated incident.

 Therefore, Duncan has failed to meet the burden of showing that he was imposed a
disproportionate sentence. (5)

 This Court observes that most often, claims of disproportionate sentencing see the first light
of day in the briefs filed in the courts of appeals, the point never having been raised at the trial court
level. When this claim has not been presented to the trial court, the trial court has had no opportunity
to examine its ruling in light of the claim of disproportionality. Therefore, when an alleged error has
not been the subject of an objection of some sort, the complainant has seldom preserved any error
for an appellate court to review. 

 Duncan has taken a further step than most and has, at least, filed a motion for new trial in
which the motion itself raises the issue of disproportionate sentencing. However, at the hearing on
that motion, Duncan made no mention of this issue and presented no evidence which would go
toward satisfaction of the tests which must be met under Solem and Harmelin. The trial court did
not have even the benefit provided this Court (i.e., the extensive list of statutes from across the
nation) to aid it in ruling on this issue once it was raised. A motion for new trial is but a pleading
and the allegations therein do not prove themselves, but must be proved. Zaragosa v. State, 588
S.W.2d 322 (Tex. Crim. App. [Panel Op.] 1979); Mackey v. State, 480 S.W.2d 720 (Tex. Crim. App.
1972). The burden of proof is on the movant in a motion for new trial. No proof was provided to
the trial court.

 The requirement that the trial court be given an opportunity to rectify any error committed
is an old one. See White v. State, 70 Tex. Crim. 285, 157 S.W. 152 (1913). This kind of requirement
has been carried forward and is contained in Rule 33.1 of the Texas Rules of Appellate Procedure.
The trial court must be given the opportunity to rule on the issues and should be accorded the
opportunity to be informed. When the trial court has not been presented the evidence upon which
to rule, an appeals court is then placed in the position of having to assume the unwelcome role of the
Monday morning quarterback. Therefore, even had the burden been met at the appellate level to
show the imposition of a disproportionate sentence, this claim is not adequately presented for appeal. 
We reject the claim of disproportionate sentencing.

 We affirm the judgment.





 Bailey C. Moseley

 Justice


Date Submitted: October 16, 2007

Date Decided: October 30, 2007


Do Not Publish

1. Very little can be determined from the clerk's record alone regarding the event which 
occurred to precipitate the charges. However, from the briefs and the reporter's record, it appears
that Duncan exposed his genitals to a group of five eleven- and twelve-year-old children who were
in his house playing video games.
2. There was no evidence given that there was actually any ex parte communication by the trial
judge or with any person associated with the trial judge to any person.
3. The testimony at the hearing on the motion for new trial did not develop that Sabo's
testimony would be admissible under the three-part test set out in Vela v. State, 209 S.W.3d 128, 131
(Tex. Crim. App. 2006). Being expert in the treatment of abused children does not necessarily
equate to having the expertise to render an opinion about the propensities or proclivities of their
abusers.
4. The power to impose cumulative or successive sentences has its roots in common law. 21a
Am. Jur. 2d Criminal Law § 886 (1998). Therefore, that power might exist in some states, even
absent statutory authority.
5. There is an apparent trend of appellate courts to go outside the record for facts not in
evidence. See Judge Cathy Cochran, Surfing the Net for a "Brandeis Brief": The Internet and
Judicial Use of Legislative Facts, 70 Tex. B.J. 9. We choose not to do so in this case.