

NUMBER 13-07-00412-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ALVIN MELVIN MERCER, JR.,                                          Appellant,

v.

THE STATE OF TEXAS,                                                Appellee.

On appeal from the 130th District Court of Matagorda County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Benavides**
**Memorandum Opinion by Justice Benavides**

In this appeal from a family violence protective order, the appellant, Alvin Melvin Mercer, Jr., argues that the trial court erred when it prohibited his counsel from pursuing a line of questioning during cross-examination that Mercer believes would have impeached a witness.  The offer of proof in the record, however, reveals that the evidence Mercer's counsel intended to elicit would not have gone to the issue of the witness's credibility, and

thus, the trial court did not abuse its discretion when it halted the line of questioning on the grounds of irrelevancy. We affirm.

## I. FACTUAL BACKGROUND

On April 24, 2007, the State, on behalf of Tiffany Leca, filed an application for a family violence protective order against Mercer, Leca's former live-in boyfriend. *See* TEX. FAM. CODE ANN. § 71.004(3) (Vernon 2002) (including "dating violence" within the definition of "family violence"); *id.* § 71.0021(a) (Vernon 2002) (defining "dating violence"). In the application, Leca alleged four incidents between 2004 and 2007 when Mercer forcefully pushed her and verbally threatened her with bodily harm.

The trial court held a hearing on the State's application for protective order on June 26, 2007. Craig Rucka, a Matagorda County Deputy Sheriff, was the first witness called. Officer Rucka stated that on October 8, 2006, he saw Mercer engage in what he believed to be "assaultive conduct" when Mercer "grabbed her [Leca] and pushed her." Rucka arrested Mercer on the scene after wrestling him to the ground and pepper-spraying him.

Leca herself was the next witness called, and she was aggressively questioned about contradictions in her description of the October 8 events. First, on December 12, 2006, Leca provided a sworn affidavit disputing Officer Rucka's story:

> We [Leca and Mercer] were arguing that night and upon returning home a sheriff escorted me back to my house to get some personal belongings. The sheriff was never called . . . . At no time during the night did Alvin Melvin Mercer, Jr., act in a wrongful way. He was thrown down and pepper sprayed in the face for no apparent cause.

Then, at the hearing, Leca recanted her affidavit testimony and said that Officer Rucka's story was, in fact, true. In doing so, she admitted that her earlier affidavit had been untruthful:

2

Q: Now, then, so, you heard the officer's testimony, did you not, that you had been assaulted?

A: Yes, sir, I did.

Q: Okay. Yet, at a time closer to the point in time of the event, you were willing to sign a document without Mr. Mercer's being present that said nothing wrong happened did you not?

A: Yes, sir. That affidavit is a lie.

Q: This affidavit is a lie?

A: So, I'm a liar, right? I lied to –

Q: So, you are now admitting to this court that you committed perjury?

A: Yes, sir, at that point.

Mercer's counsel was, at this juncture, developing a trial strategy to discredit Leca's allegations by impugning her honesty. Presumably seeking to advance this strategy, Mercer's counsel next attempted to question Leca about a recent conviction for driving while intoxicated (DWI) and her supposed violation of the probation she received: "Have you completed all the terms—are you in good standing, if you will, inside those terms of your probation?"

To this question, Leca replied, "Yes, sir." Almost immediately, however, the State objected to the entire "line of questioning," arguing that Leca's adherence to her DWI probation was irrelevant to the issue of whether Mercer had committed family violence and whether family violence was likely to occur again in the future. In response, Mercer's attorney defended his strategy by explaining, "Your Honor, I'm going to the credibility of this witness and the fact that she said she was in good standing and we have reason to believe

that she's actually broken some of the terms of her [DWI] probation." The trial court sustained the State's objection on the basis of irrelevancy. *See* Tex. R. Evid. 402.

A similar dispute occurred later in the hearing when Mercer called Robert Gannaway to the stand to testify that he had seen Leca drink alcohol at a fishing tournament in Sargent, Texas. The State again objected; Mercer's counsel explained that he was seeking to impeach Leca's credibility. The trial court again sustained the objection on the basis of irrelevance. *See id.*

At the conclusion of the hearing, the court granted the protective order. The following day, Mercer filed an appeal, arguing that the trial court erred by preventing his attorney from impeaching Leca on the stand.

## II. PRESERVATION OF ERROR

The sole issue in this appeal is whether the trial court erred by excluding evidence that Mercer was attempting to elicit from Leca on cross-examination. Such error must be preserved by an offer of proof. *See* Tex. R. Evid. 103(a)(2). The State argues that Mercer failed to make the necessary offer of proof, but we disagree. It is true that Mercer's counsel did not explicitly make an offer of proof, but under the rules of evidence, Mercer's counsel did not need to satisfy this formality as long as the "substance of the evidence" was "apparent from the context within which questions were asked." *Id.*

It is apparent from the context of the questions asked by Mercer's counsel that he was seeking to impeach the witness by showing that she was dishonest about whether she had adhered to the terms of her probation. This is not mere speculation; Mercer's counsel explicitly stated, "I'm going to the credibility of this witness and the fact that she said she

4

was in good standing and we have reason to believe that she's actually broken some of the terms of her [DWI] probation." Furthermore, when the trial court later prevented Mercer's counsel from questioning Gannaway about Leca's alcohol consumption at a fishing tournament, Mercer's counsel explained that he was seeking to introduce the evidence in order to bring Leca's credibility into question. All of these statements in the record make the substance of the evidence Mercer sought to introduce abundantly apparent. Therefore, the complaint was preserved. We now turn to the merits of the complaint.

### III. RELEVANCE

Mercer asserts that the trial court erred by halting the line of questioning about DWI probation which was intended to impeach Leca. We believe, however, that the trial court did not abuse its discretion in finding that line of questioning to be irrelevant in a family violence protective order hearing.

Under the Sixth Amendment, defendants have the due process right to fully and completely confront adverse witnesses during cross-examination—but that right is not absolute. *See* U.S. CONST. amend. VI; *Carpenter v. State*, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998); *see also Lopez v. State*, No. 12-02-00380-CV, 2003 Tex. App. LEXIS 10788, **11-12 (Tex. App.–Tyler Dec. 23, 2003, pet. denied) (mem. op, not designated for publication) (applying this principle in a dating violence protective order hearing). The trial court has the discretion to impose reasonable limits on cross-examination based upon concerns about "harassment, prejudice, confusion of the issues, and *marginally relevant interrogation*." *Carpenter*, 979 S.W.2d at 634 (emphasis added); *Striedel v. Striedel*, 15

5

S.W.3d 163, 166 (Tex. App.–Corpus Christi 2000, no pet.); *see also Lopez*, 2003 Tex. App. LEXIS, at **11-12.

In a hearing on a family violence protective order the only relevant issues are whether family violence has occurred and whether it is likely to occur in the future. TEX. FAM. CODE ANN. § 85.001 (Vernon 2002); *In re Epperson*, 213 S.W.3d 541, 544 n.4 (Tex. App.–Eastland 2007, no pet.) (acknowledging a "mutually violent" relationship between a complainant and her ex-fiancé, but refusing to factor the culpability of the complainant into its decision because her behavior was "not relevant to [the] inquiry into whether the evidence sufficiently shows that [the ex-fiancé] is likely to commit family violence in the future"). Because a trial court has the discretion to limit irrelevant questions on cross-examination, it follows that a trial court in a family violence protective order hearing may limit any cross-examination if the questions asked are irrelevant to whether family violence occurred in the past or will occur in the future. *See Carpenter*, 979 S.W.2d at 634; *Dukes v. State*, 239 S.W.3d 444, 448-49 (Tex. App.–Dallas 2007, pet. ref'd).

For example, in an unpublished 2003 opinion, the Tyler Court of Appeals found no error in a trial court's decision to halt the cross-examination of a witness in a dating violence protective order hearing when the defendant's attorney asked questions concerning the complainant's knowledge of the Bible, out-of-wedlock pregnancy, and adultery. *See Lopez*, 2003 Tex. App. LEXIS, at **11-12. The Court reasoned that these issues were "marginally relevant" to the question of whether family violence had occurred or would occur in the future, and thus it was not an error to exclude the evidence as irrelevant. *Id.*

6

In this case, we are confronted with a similar question of relevancy. Specifically, we must decide whether Leca's alleged violation of her alcohol probation terms was relevant to whether Mercer had committed dating violence in the past or whether it was likely that he would do so in the future. We do not believe the particulars of her adherence to her probation are relevant to those questions. *See Callins v. State*, 780 S.W.2d 176, 196 (Tex. Crim. App. 1989); *see also Jones v. State*, No. 14-97-00180-CR, 1999 Tex. App. LEXIS 2429, at *8 (Tex. App.–Houston [14th Dist.] Apr. 1, 1999, no pet.) (mem. op., not designated for publication) ("[D]enying a defendant the right to impeach a witness on the basis of the witness' deferred adjudication probation does not deny the defendant his constitutional right of confrontation."). The relevant question is whether Leca was honest on the four occasions when she claimed that Mercer had committed family violence—and, in fact, Mercer's counsel did ask her these questions. Moreover, he was not limited by the trial court when he asked them.

In short, the inquiries of Mercer's counsel into Leca's supposed probation violations were not relevant in a family violence protective order hearing, and thus the trial court did not abuse its discretion in halting the cross-examination.[1]

---

[1] Mercer cites *Davis v. Alaska* in his appellate brief when he proposes that "when a witness is a confessed perjurer . . . the motives to lie are unquestionably 'on the table' and the trial court abuses its discretion by disallowing an examination into . . .motives and credibility." *See* 415 U.S. 308, 319 (1974). Mercer, however, misreads *Davis* in precisely the same way the appellant in *Callins* misread *Davis*. *Callins v. State*, 780 S.W.2d 176, 196 (Tex. Crim. App. 1989). As the *Callins* court explained:

In *Davis*, petitioner was denied his constitutional right of confrontation because he was not allowed to impeach a witness on the basis of his juvenile record regarding probation for burglary. Unlike this case, the petitioner in *Davis* was able to show that the witness might have been subject to undue pressure from the police and made his identification of petitioner under fear of possible probation revocation. This showing by the petitioner overcame the State's asserted interest in preserving the confidentiality of juvenile delinquency proceedings. In the instant case, however, appellant has not made any showing that witness Henderson testified against him as a result of bias, motive or ill will emanating from his status of deferred

7

## IV. Conclusion

The trial did not err when it halted the cross-examination of Leca on the basis that the questioning was irrelevant. We AFFIRM the judgment of the trial court.

_____
GINA M. BENAVIDES
Justice

Memorandum Opinion delivered and
filed this the 31st day of July, 2008.

---

adjudication. Appellant has failed to lay the necessary predicate that would invoke the right of confrontation.

*Id.* In other words, evidence that a state's witness is on probation for an alcohol offense may be relevant to show the "potential bias or interest of the witness in helping the state," but in this case, Mercer's stated purpose was not to show that Leca was biased in favor of the state; it was to show that she was dishonest. *See Salazar v. State*, 222 S.W.3d 10, 16-17 (Tex. App.—Amarillo 2006, pet. ref'd) (citing *Maxwell v. State*, 48 S.W.3d 196, 199 (Tex. Crim. App. 2001)); *see also Moreno v. State*, 22 S.W.3d 482, 485-86 (Tex. Crim. App. 1999). *Davis*, therefore, is distinguishable.