**Affirmed as Modified; Opinion Filed December 29, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01463-CV

### SAMUEL PETER VIVES, Appellant
### V.
### AMANDA LEE GERSTEN, Appellee

**On Appeal from the 292nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. CV13-00303-V-292ND**

## MEMORANDUM OPINION

Before Justices O'Neill, Francis, and Myers
Opinion by Justice Myers

Appellant, Samuel Peter Vives, challenges a protective order entered in favor of his former girlfriend, Amanda Lee Gersten. In four issues, Vives challenges (1) the sufficiency of the evidence that family violence occurred, (2) the sufficiency of the evidence that family violence was likely to occur in the future, (3) the trial court's award of protection to Gersten's family, and (4) the trial court's failure to include the addresses he is prohibited from visiting. Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4. As modified, we affirm the trial court's judgment.

On June 5, 2013, the Dallas County District Attorney's Office filed an application for a protective order against Vives on behalf of Gersten. A temporary ex parte protective order was issued. On June 19, 2013, the court held a hearing on the application, entered a default judgment against Vives, and granted the protective order. Vives moved to vacate the default judgment,

which the trial court granted, and a second hearing was held on September 24, 2013. Gersten and Vives, as well as their friends, testified at the hearing.

Gersten testified she and Vives were in a dating relationship "on and off" for five years. The relationship ended in March 2013 because of the violence, and she felt Vives was "stalking" her. Gersten claimed the violence began about a year into their relationship. During the second year of their relationship, Vives struck Gersten in the eye while holding her cell phone in his hand like "brass knuckles." Gersten claimed she loved Vives and always forgave him after he hit her. While on a business trip, Gersten noticed her cell phone camera turning on inexplicably. She later learned that Vives hired someone to "tap her phone and email" so he would know where she was and what she was doing.

Gersten and Vives both admitted that they included bondage activities in their sex life. Gersten claimed that in the last year, and without her permission, Vives tied her to a pole in his home, had very rough sex with her, and then spit in her face. She also reported another occasion where Vives was very intoxicated during sex when he choked her and smothered her with a pillow. Vives denied choking her but Gersten had bruises on her neck as evidence. Vives later purchased make-up for Gersten to use to cover the bruises on her neck. Gersten testified she and Vives had an erotic portrait taken, which Vives kept hanging in his bedroom. After their break-up, Vives lit the portrait on fire and took a picture of it burning. Vives posted the burning erotic photograph on Facebook, and he made it his main banner. Vives maintains a public profile and anyone with a Facebook account could see the burning photograph.

The most recent attack occurred on March 24, 2013. Gersten stated she was trying to leave his home when Vives bit her finger and drug her by her hair across the room. When she made her way outside, Vives threw her against the staircase and she hit her head. Gersten then

–2–

had an anxiety and asthma attack. Vives' motorcycle was blocking the gate, and he would not move it and allow Gersten to leave.

Gersten testified about taking Vives to see his probation officer. Vives told her he was on probation for DWI. Gersten later learned Vives was actually on probation for aggravated assault; Vives eventually told her he held a gun to his ex-girlfriend's head.

After their break-up, Gersten reported having dinner with a friend after which, she walked out of the restaurant and Vives was waiting for her outside. Vives would also show-up at her home, unannounced.

Karen Hernandez testified she had been a friend of Gersten's for twelve years. Hernandez witnessed Gersten with black eyes and claimed Gersten reported multiple instances of violence at the hand of Vives. Hernandez tried to convince Gersten to report the violence to the police, but Gersten refused. Evidence of Gersten's injuries was introduced through photographs taken by Hernandez.

Vives acknowledged posting the burning photograph on Facebook *after* being served with the temporary protective order. He said he did it because his current girlfriend did not like the picture hanging in his house. Vives claims there was nothing wrong with how he "chose to get rid of [his] property."

Vives denied causing the injuries exhibited in the photographs of Gersten. However, he admitted he and Gersten had several arguments during that period. He provided the court with a copy of text messages, reportedly from Gersten, in which she tells him if he calls the police she "can start to cry very quick and say you hit me up if you wanna play dirty . . . ." Vives knew Gersten's father was a minister and yet he left nude photos of Gersten in her parent's front yard.

At the conclusion of the hearing, the trial court told the parties:

> This case has several unusual twists, one of which is an admitted violation
> of my temporary protective order after it was entered by posting of the picture, an

open perjury statement by a witness and some unusual conduct by both the Applicant and the Respondent.

The family violence statutes have a hard time accommodating all of the circumstances that are set forth in this case, but the pictures and the testimony match to the extent that I'm going to find that family violence has occurred in the past and is likely to occur in the foreseeable future.

Vives filed his notice of appeal on October 23, 2013.

In Vives' first two issues, he challenges the factual and legal sufficiency of the evidence that (1) he possessed the requisite intent required to support a finding that family violence occurred and (2) family violence was likely to occur in the future.

A legal sufficiency challenge to a family violence protective order may be sustained only when "(1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact." *In re F.K.M.*, No. 05-11-00276-CV, 2012 WL 939271, *3 (Tex. App.—Dallas March 19, 2012, no pet.) (mem. op.) (citing *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998)). We consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that it would support. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We must credit favorable evidence if a reasonable fact-finder could and disregard contrary evidence unless a reasonable fact-finder could not. *Id.* at 827. "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.* at 827.

In reviewing a factual-sufficiency challenge, we weigh all of the evidence in the record. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). We will overturn the finding only if it is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong

and manifestly unjust. *Id*. The fact-finder is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet*, 61 S.W.3d 599, 615–16 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). We will not substitute our judgment for that of the trial court merely because we might reach a different conclusion. *Id*. at 616.

A protective order issued under section 85.001 of the Texas Family Code may be granted upon the finding that family violence has occurred and is likely to occur in the future. TEX. FAM. CODE ANN. § 85.001 (West 2014). The definition of family violence includes "dating violence." ID. § 71.004. As defined:

> (a) "Dating violence" means an act, other than a defensive measure to protect oneself, by an actor that:
> (1) is committed against a victim:
> (A) with whom the actor has or has had a dating relationship; or
> (B) because of the victim's marriage to or dating relationship with an individual with whom the actor is or has been in a dating relationship or marriage; and
> (2) is *intended* to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the victim in fear of imminent physical harm, bodily injury, assault, or sexual assault.

ID. § 71.0021 (emphasis added).

Vives first challenges the trial court finding that family violence occurred which requires the finding he intended the result of his alleged actions. *See id*. § 71.0021(a)(2). Vives contends the record does not include any evidence of context or of indicators that could demonstrate he intended the result of his actions.

Vives bases his argument for a lack of evidence regarding his intent on a single case, *Gonzalez v. Rangel*. No. 13-05-0641-CV, 2006 WL 2371464 (Tex. App.—Corpus Christi Aug. 17, 2006, no pet.) (mem. op.). In *Gonzalez*, "[t]he trial court indicated that it found no evidence of an overt physical act of family violence, and thus, the question is whether the evidence shows that family violence in the form of threats occurred." *Id* at *2. The *Gonzalez* opinion is a

thorough analysis of the sufficiency of the evidence to support the entry of a protective order when the only conduct complained about was statements and threats made toward the applicant. This case is distinguishable.

Here, there is evidence of overt physical acts. The record contains testimony and photographs of injuries from more than one occasion. There is evidence Gersten received black eyes and bruises on her neck from being choked, and testimony that she was dragged across the room by her hair and smothered with a pillow—all at the hands of Vives. A reasonable and fair-minded person could decide Vives intended to harm Gersten when he hit her in the eye, using a cell phone like "brass knuckles." Reviewing the evidence in the light most favorable to the court's findings and indulging every reasonable inference in support thereof, we conclude that there was more than a scintilla of evidence supporting the trial court's findings that family violence has occurred. *See In re F.K.M.*, 2012 WL 939271 at *3. Further, viewing the evidence in a neutral light, we do not find the trial court's findings were so contrary to the evidence as to be clearly wrong or unjust. *See Houchin v. Houchin*, No. 07-12-00373-CV, 2013 WL 2467343, *4 (Tex. App.—Amarillo May 31, 2013, no pet.) (mem. op.). Therefore, we conclude the evidence is sufficient to support the trial court's finding that family violence occurred and we overrule Vives' first issue.

Vives' second issue challenges the sufficiency of the evidence to support the trial court finding that family violence is "likely to occur in the future." Vives contends a finding that family violence occurred in the past is not enough to support the finding that family violence will occur in the future. In cases involving family violence protective orders, evidence that a person has engaged in abusive conduct in the past permits an inference that the person will continue this behavior in the future. *Teel v. Shifflett*, 309 S.W.3d 597, 604 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (citing *Banargent v. Brent,* No. 14–05–00574–CV, 2006 WL 462268, at *1–2

(Tex. App.—Houston [14th Dist.] Feb. 28, 2006, no pet.) (mem.op.)). "Oftentimes, past is prologue; therefore, past violent conduct can be competent evidence which is legally and factually sufficient to sustain the award of a protective order." *Id.* (quoting *In re Epperson*, 213 S.W.3d 541, 544 (Tex. App.—Texarkana 2007, no pet.)).

In his brief, Vives contends he had "limited interactions" between himself and Gersten *after* the temporary protective order was in place. But Vives testified that he posted the erotic photograph of Gersten in flames on the Internet *after* he had been served with the temporary protective order. While past violence does not mandate a finding of likely future violence, it can support such a finding in some instances, such as here, where the testimony and evidence showed a pattern of violent behavior and disregard for the temporary order. *See Houchin*, 2013 WL 2467343 at *4; *Dalbosco v. Seibert*, No. 14–11–00429–CV, 2012 WL 1795108, *7 (Tex. App.—Houston [14th Dist.] May 17, 2012, pet. denied) (mem. op.). Reviewing the evidence of Vives' post-order actions in the light most favorable to the court's findings and indulging every reasonable inference in support thereof, we conclude that there was more than a scintilla of evidence supporting the trial court's findings that family violence is likely to occur in the future. *See Houchin*, 2013 WL 2467343 at *4. Further, viewing the evidence in a neutral light, we do not find the trial court's findings were so contrary to the evidence as to be clearly wrong or unjust. *Id.* Accordingly, Vives' second issue challenging the sufficiency of the evidence is overruled.

In his third issue, Vives challenges the trial court's award of protection to Gersten's family when her application only requested protection for herself. Specifically, Vives argues the protective order violates rule 301 of the Texas Rules of Civil Procedure by granting more relief than Gersten requested. Gersten contends Vives failed to preserve this complaint. However, Vives' motion for new trial specifically states, "Gersten's Application for Protective Order does

not include any references to any member of her family or household. Instead, the only relief sought is for Gersten herself." Therefore, we will address Vives' third issue.

Texas Family Code section 85.022 specifically authorizes a trial court to prohibit a person who is found to have committed family violence from "going to or near the residence or place of employment or business; of a person protected by an order or a member of the family or household of a person protected by an order." TEX. FAM. CODE ANN. § 85.022(b)(3) (West 2014). Because the trial court was authorized by statute to add these conditions to Vives' protective order, we overrule Vives' third issue. *Id.*; *see also Maki v. Anderson*, 2013 WL 4121229, No. 02-12-00513-CV, *6 (Tex. App.—Fort Worth Aug. 15, 2013, pet. denied) (mem. op.).

In Vives' fourth issue, he claims the protective order exceeds the allowable protections authorized in the family code. Specifically, Vives argues the trial court erred because nothing in the record indicates Gersten requested her employment address remain confidential, yet the protective order states that Vives is prohibited from:

> 5) Going to or within 500 feet of the employment or business of AMANDA LEE GERSTEN or a member of the family or household of AMANDA LEE GERSTEN, to wit: *any confidential employment address in Dallas County, TX*

(emphasis added). Gersten concedes there is no written or oral request for confidentiality contained within the appellate record. Further, the temporary protective orders issued during the pendency of this case included an employment address. We conclude the trial court erred by finding the employment address to remain confidential, and we sustain Vives' fourth issue.

This Court has the power to correct and modify the trial court's judgment to make the record speak the truth when it has the necessary data and information to do so. *See* TEX. R. APP. P. 43.2(b). Accordingly, we modify the fifth provision of the protective order to read as follows:

"5) Going to or within 500 feet of the employment or business of AMANDA LEE GERSTEN or a member of the family or household of AMANDA LEE GERSTEN, to wit: 5701 Virginia Parkway, McKinney, TX 75071."

We affirm the trial court's judgment as modified. We ORDER the trial court to enter a corrected protective order reflecting this modification.

131463F.P05

/Lana Myers/
_____
LANA MYERS
JUSTICE



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

SAMUEL PETER VIVES, Appellant

No. 05-13-01463-CV          V.

AMANDA LEE GERSTEN, Appellee

On Appeal from the 292nd Judicial District Court, Dallas County, Texas

Trial Court Cause No. CV13-00303-V-292nd.

Opinion delivered by Justice Myers. Justices O'Neill and Francis participating.

In accordance with this Court's opinion of this date, the September 24, 2013 Protective Order of the trial court is **MODIFIED** as follows:

"5) Going to or within 500 feet of the employment or business of AMANDA LEE GERSTEN or a member of the family or household of AMANDA LEE GERSTEN, to wit:  5701 Virginia Parkway, McKinney, TX 75071."

We **AFFIRM** the trial court's judgment as **MODIFIED**. We **ORDER** the trial court to enter a corrected protective order reflecting this modification.

It is **ORDERED** that appellee AMANDA LEE GERSTEN recover her costs of this appeal from appellant SAMUEL PETER VIVES.

Judgment entered this 29th day of December, 2014.