**AFFIRMED and Opinion Filed March 22, 2022**



In The

**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00647-CV**

**JARELLE HIGHTOWER, Appellant**
**V.**
**CHELSEA PEARL, Appellee**

**On Appeal from the 59th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. FA-17-0186**

## MEMORANDUM OPINION ON REHEARING

Before Justices Pedersen, III, Goldstein, and Smith
Opinion by Justice Smith

Pro se appellant Jarelle Hightower appeals the trial court's issuance of a protective order on behalf of appellee Chelsea Pearl, formerly Chelsea Wade. Because we find the evidence sufficient to support the trial court's finding that family violence had occurred and was likely to occur in the future, we affirm.

### Procedural History

Hightower filed a petition seeking to be named sole managing conservator of his and Pearl's son on February 2, 2017. On February 14, 2017, the Grayson County Criminal District Attorney's Office (the State) filed an application for protective

order on behalf of Pearl. The protective order detailed four incidents in 2016 in which Hightower assaulted or threatened Pearl or assaulted one of her children. The trial court conducted a hearing and issued a protective order on March 7, 2017, with an expiration date of March 7, 2019.

Hightower filed his first notice of appeal on April 3, 2017. We dismissed the appeal for want of jurisdiction because a final, appealable order providing for support or possession of or access to the child had not been entered in the underlying suit affecting the parent-child relationship. *See* TEX. FAM. CODE ANN. § 81.009(c).

The trial court entered a final, appealable order on June 22, 2020. Hightower filed a second notice of appeal on June 29, 2020. On September 9, 2020, we again dismissed this appeal for want of jurisdiction. Hightower filed a motion for rehearing, which we granted on October 13, 2020. We concluded that we did have jurisdiction over the March 7, 2017 protective order because the protective order was issued during the pendency of a child custody suit and, thus, appeal could be taken when the final order in the child custody case was signed on June 22, 2020. *See id.* We vacated our September 9, 2020 opinion and reinstated the appeal.

After receiving Hightower's brief, we notified him by letter that his brief did not comply with Rule 38 of the Texas Rules of Appellate Procedure in that it did not contain a proper list of all parties, index of authorities, statement of facts, certificate of compliance, or certificate of service; the table of contents did not indicate the subject matter of each issue; the statement of the case was not supported by record

references; the brief did not contain a succinct, clear, and accurate statement of the arguments supported by appropriate citations to legal authorities or to the record; and the trial court's judgment was missing from the appendix. *See* TEX. RS. APP. P. 9.4(i)(3); 9.5(e); 38.1(a)–(d), (g)–(i), (k)(1)(A). We cautioned Hightower that his appeal may be dismissed if he did not file an amended brief that complied with the rules within ten days.

Hightower filed an amended brief[1] and corrected several of the previous briefing deficiencies, but his argument section remains less than a page and still does not contain any citations to the record. We can, however, discern from his brief that he contends (1) Pearl did not present clear and convincing evidence of family violence and, thus, the trial court's finding that family violence had occurred and would likely occur in the future was not supported by sufficient evidence; and (2) the trial court was partial and biased. Because we can discern Hightower's issues on appeal, we will review them. *See Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 896 (Tex. App.—Dallas 2010, no pet.) ("[W]e must be able to discern what question of law we will be answering.").

**Sufficiency of the Evidence**

---

[1] Pearl did not file a brief in response.

We review the sufficiency of the evidence to support a family violence finding under the traditional legal and factual sufficiency standards of review. *In the Interest of L.J.H.*, No. 05-21-00183-CV, 2021 WL 4260769, at *16–17 (Tex. App.—Dallas Sept. 20, 2021, no pet.) (mem. op.); *see also In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000) ("When the trial court acts primarily as a factfinder, appellate courts normally review its determinations under the legal and factual sufficiency standards."). In determining whether the evidence is legally sufficient to support a challenged finding, we review the evidence in the light most favorable to the finding. *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005). We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* Anything more than a scintilla of evidence is legally sufficient to support the challenged finding. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998).

When a party attacks the factual sufficiency of the evidence pertaining to a finding on which the party did not have the burden of proof, we may set aside the finding only if, after considering all the evidence, it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Harris Cty. v. Coats*, 607 S.W.3d 359, 380–81 (Tex. App.—Houston [14th Dist.] 2020, no pet.). The amount of evidence necessary to affirm a judgment is far less than the amount necessary to reverse. *Coats*, 607 S.W.3d at 381.

In order to render a protective order, a trial court must hold a hearing and, at the close of the hearing, must find that family violence has occurred and is likely to occur in the future. TEX. FAM. CODE. ANN. §§ 81.001, 85.001(a)–(b). "Family violence" includes "dating violence" and is defined, in relevant part, as "an act, other than a defensive measure to protect oneself," that is committed by an actor against an applicant for a protective order "with whom the actor has or has had a dating relationship" and "is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the . . . applicant in fear of imminent physical harm, bodily injury, assault, or sexual assault." *Id.* §§ 71.0021(a); 71.004(3).

As the trier of fact, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *City of Keller*, 168 S.W.3d at 819. The trial court may believe all, part, or none of a witness's testimony and resolve any inconsistencies. *Id.* at 819–20.

At the hearing on the State's application for protective order, Pearl testified that she and Hightower were previously in an intimate relationship and lived together. They had one child together. After they separated but before temporary orders were entered regarding custody and possession, the two agreed to a visitation schedule. On December 7, 2016, Hightower came to her house to pick up their child, as well as another child of Pearl's that he had helped raise since birth. They argued

in the driveway, and then Hightower tried to force his way into her house and punched her in the face.

Hightower disputed Pearl's account of the December 7 incident. He testified that he asked Pearl for help with the car seats because he was in a leg brace due to a recent knee surgery. Pearl refused. Pearl also refused to bring the children out to the car even though they had an agreement for him to take them. Thereafter, Hightower hopped up the stairs to enter the house and, when he reached for the door, she jumped in front of him. He lost his balance and, while falling, wrapped his arms around her causing them both to fall into the door. He denied punching her. Instead, Hightower claimed that Pearl injured her face when she fell into the door.

Hightower's friend, who was with him on December 7, also testified that she did not see Hightower punch Pearl and that he just fell into her. Hightower told Catherine Craig, an investigator with the Department of Family and Protective Services, the same story: he had a brace on his leg, was walking up the stairs, tripped at the same time Pearl stepped in front of him, and he fell into her.

Pearl also testified that, when they first separated, she lived in a crisis center or women's shelter because he was abusing her. On one occasion, he kicked her in her leg. Hightower denied this as well and claimed that Pearl's leg injuries were caused by a car accident. On another occasion, he "smacked" their baby with the door as he was coming into the room and then put his hands around her head and pressed "like he was trying to crush [her] skull."

–6–

Pearl further testified that she was scared of Hightower and concerned for her safety because he constantly parked outside of her house, drove by threatening her, destroyed her property, and sent her pictures of the destroyed property. Craig testified that she became concerned Hightower was stalking Pearl because he was always watching her and reporting details of what he saw to Craig. Other evidence also showed that Hightower was watching Pearl in the weeks leading up to the hearing, including Hightower's own admissions during cross-examination. He testified he was just making sure she was served so that he did not have to worry about his children leaving town and was checking on the children's welfare.

Although Pearl admitted on cross-examination that she met Hightower on occasion, sent him pictures of her and the children, and even asked if he could bring them food, she maintained that she had been afraid of him the entire time and was trying to get along with him for the sake of the children. The trial court was free to believe Pearl's testimony and disbelieve Hightower's. *See id.*

Considering the evidence in the light most favorable to the trial court's finding, we conclude the evidence was legally sufficient to enable a reasonable and fair-minded factfinder to find family violence had occurred and would likely occur in the future. *See id.* at 827. And, even when the evidence is considered in a neutral light, we cannot say the evidence in support of the family violence finding is so weak as to make the finding clearly wrong and manifestly unjust. *See Cain*, 709 S.W.2d at 176; *see also In re Epperson*, 213 S.W.3d 541, 544 (Tex. App.—Texarkana 2007,

no pet.) (past violent conduct can be competent evidence that is legally and factually sufficient to support a finding that family violence will likely occur in the future). Therefore, we conclude the evidence is legally and factually sufficient and overrule Hightower's first issue.

## Judicial Bias

In what we have discerned is Hightower's second issue, he argues he "was faced with prejudice and conflict of interest by the presiding judge" and that the judge was required to recuse himself under Rule 18b(b) due to personal bias or prejudice against Hightower as a result of prior dealings "that directly hurt" the judge. *See* TEX. R. CIV. P. 18b(b)(2) (a judge must recuse in any proceeding in which the judge has a personal bias or prejudice concerning the subject matter or a party). A party must file a verified motion to seek the recusal of a judge who is presiding over the party's trial or hearing. TEX. R. CIV. P. 18a.

Hightower has not directed us to, nor have we found, a motion to recuse in the record. Additionally, Hightower made no objection at the hearing or orally sought to recuse the judge. Therefore, Hightower has waived his complaint for appellate review. *See* TEX. R. APP. P. 33.1. We overrule Hightower's second issue.

**Conclusion**

We affirm the order of the trial court.

/Craig Smith/
CRAIG SMITH
JUSTICE

200647F.P05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

JARELLE HIGHTOWER, Appellant

No. 05-20-00647-CV          V.

CHELSEA PEARL, Appellee

On Appeal from the 59th Judicial District Court, Grayson County, Texas
Trial Court Cause No. FA-17-0186.
Opinion delivered by Justice Smith. Justices Pedersen, III and Goldstein participating.

In accordance with this Court's opinion of this date, the protective order of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee CHELSEA PEARL recover her costs of this appeal from appellant JARELLE HIGHTOWER.

Judgment entered this 22nd day of March 2022.