*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



★ ★ ★  ★ ★ ★

# MEMORANDUM OPINION

No. 04-09-00091-CV

**K.D.**,
Appellant

v.

**D.D.**,On Behalf Of T.D., A Child,
Appellee

From the County Court at Law, Val Verde County, Texas
Trial Court No. 2533
Honorable Sergio J. Gonzalez, Judge Presiding

Opinion by:   Marialyn Barnard, Justice

Sitting:      Catherine Stone, Chief Justice
             Karen Angelini, Justice
             Marialyn Barnard, Justice

Delivered and Filed:   March 3, 2010

AFFIRMED

K.D. ("Kevin") appeals from a final protective order sought by D.D. ("Mother") on behalf of her minor son, T.D. ("Tony").[1]  Kevin contends (1) the trial court erred in admitting certain hearsay testimony, and (2) the evidence is legally and factually insufficient to establish he committed family violence, or that he was likely to commit family violence in the future.  We affirm.

_____

[1] Because of the sensitive nature of this case, and the court's interest in protecting the identity of the minor child, the style of this case includes only the parties' initials.  Moreover, for purposes of confidentiality and clarity, we will refer to parties and nonparties generically or by pseudonym.

BACKGROUND

Mother and G.D. ("Father") divorced in 2007. The couple had one minor son, Tony. Mother was awarded primary possession of Tony, and Father was given standard visitation rights. Approximately a year and a half after the divorce, Mother sought a protective order on behalf of five-year-old Tony. In her application for protective order, Mother alleged thirteen-year-old Kevin, who is Father's son from another marriage and Tony's half-brother, engaged in conduct that constituted family violence. Mother claimed that when Tony visited Father, Kevin, who lived with Father, would force Tony to engage in, and watch Kevin engage in, sexual acts. Kevin allegedly threatened Tony with a belt, telling Tony that if Tony told Mother about the abuse, Kevin would "whip his ass" the next time Tony visited.

The trial court granted Mother an ex parte temporary protective order, and set the matter for hearing. At the hearing, Mother testified Tony was "sexually molested" by Kevin. Her testimony was based on information given to her by Tony. Tony also testified and said, "My brother was showing me his Bubba[2] under the covers." Tony said this made him feel "very bad."

Father also testified. He stated that during visitation, Tony stays with him in his room. However, he admitted that on one occasion Tony spent the night in Kevin's room–this was confirmed by V.A.D. ("Grandmother"), who testified Father and Kevin reside in her house. Both Father and Grandmother testified they did not know if family violence actually occurred; Father went so far to say that he did not have an opinion on the issue. However, Father admitted Kevin has had other issues. Father testified Kevin has difficulties in school–he does not do the required work and "doesn't really take authority on schooling." Kevin has also been seeing a psychologist for

---

[2] The evidence showed Tony and his family referred to a penis as a "boe-boe." And, Tony referred to Kevin and Kevin's penis as "Bubba."

approximately a year–starting before the alleged family violence incident–and has been diagnosed with "repressed anger." Grandmother testified Kevin has an "anxiety disorder" and has been taking Zoloft once a day for more than a year.

Ultimately, the trial court granted a final protective order, finding Kevin had committed family violence and family violence was likely to occur in the future. *See* TEX. FAM. CODE ANN. § 85.001 (Vernon 2008) (stating findings required for issuance of protective order). The protective order prohibits Kevin from, among other things: (1) committing family violence, (2) communicating with Tony in a threatening or harassing manner, (3) communicating threats to Tony through another person, (4) engaging in conduct that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass Tony, (5) going within five hundred feet of Tony's residence, (6) going within five hundred feet of any place Tony normally attends or resides, and (7) removing Tony from Mother or the jurisdiction. By its terms, the protective order expires in two years.

## ANALYSIS

### *Admissibility of Testimony*

Kevin first contends the trial court erred in allowing Mother to testify to certain statements made to her by Tony. Kevin argues the statements were inadmissible hearsay.

It is within the trial court's discretion to admit or exclude evidence. *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000). Accordingly, a trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *Id.* To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding principles; in other words, we must decide whether the decision was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985), *cert.*

*denied*, 476 U.S. 1159 (1986). An appellate court may not substitute its own judgment for that of the trial court simply because it disagrees with the court's ruling. *Bowie Mem'l Hosp. v. Wright*, 70 S.W.3d 48, 52 (Tex. 2002). Even if an appellate court determines the trial court abused its discretion in admitting or excluding evidence, it cannot reverse the trial court's judgment unless the evidentiary ruling was harmful, that is, it probably caused the rendition of an improper judgment. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000); *see* Tex. R. App. P. 44.1(a).

During the hearing, the following exchange occurred:

[Mother's Attorney]: Would you tell the court, before we get into that testimony, what it is you observed? How it was that you came to find out about that?

[Mother]: It was in the evening and [Tony] was already in bed. I had gone back in to tuck him in and to tell him goodnight, and he was acting a little bit weird. He had covers up to his neck. I said, "[W]hat are you doing?" ["]Nothing, nothing, mommy.["]

I said, "[W]hat's going on?" He said, "[N]othing." I noticed that he had reached down under the covers to pull up his pants. And I says [sic], "What are you doing?" He says, "Nothing.["] ["]I was["] – in our family, we – ["][Kevin] touched my private part.["] In my family, we call our private parts "boe-boe." And he says, ["]I was touching my ['bo]e-boe.[']" And I said, "Why, where did you learn that?"

At this point, Kevin's attorney objected, stating "The testimony is hearsay. She can give her impressions, but she can't tell us what the part is. She cannot testify over what a third party said, or didn't say." Kevin contends Mother should not have been allowed to testify to Tony's statements that Kevin touched Tony's private part and Tony was touching his "boe-boe."

"'Hearsay'" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). Hearsay is generally inadmissible. *Id.* R. 802. However, any error in the trial court's admission of evidence is waived if the complaining party allows the same to be introduced without objection. *Bay*

*Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex. 2007) (citing *Richardson v. Green*, 677 S.W.2d 497, 501 (Tex. 1984)).

Before Kevin objected to Mother's statements about Kevin touching Tony's private parts and Tony's "boe-boe," Mother testified without objection that she learned from Tony that he was "sexually molested" by Kevin. After the objection, Mother continued to testify and stated without objection that Tony told her Kevin had taught him to touch his "boe-boe." She also testified without objection that Tony told her Kevin made Tony watch Kevin masturbate, and made Tony touch him. When Tony tried to turn away, Kevin grabbed his face and forced him to watch. This unobjected to testimony is similar to, and more inculpatory than, the testimony to which Kevin objected. Kevin's objection contested one small portion of the testimony regarding Tony's statements to his Mother about the sexual abuse; most of the testimony on this subject was admitted without objection. We therefore hold Kevin did not properly preserve the hearsay issue for our review. *See McShane*, 239 S.W.3d at 236.

### Sufficiency of the Evidence

In his second and third issues, Kevin contends there is legally and factually insufficient evidence to prove he (1) committed family violence, and (2) family violence is likely to occur in the

future.[3] Both of these findings are required before a trial court can issue a protective order, and in this case the trial court made both required findings. *See* TEX. FAM. CODE ANN. § 85.001.

Findings of fact in a case tried to the court have the same force and dignity as a jury's verdict upon jury questions and are reviewable under traditional legal and factual sufficiency standards. *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000); *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). When the appellant challenges the legal sufficiency of the evidence to support an adverse finding on an issue for which he did not have the burden of proof, the appellant must demonstrate there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). In conducting the legal sufficiency review, the appellate court must view the evidence in the light most favorable to the trial court's finding, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). The evidence is legally sufficient if it would enable a reasonable and fair-minded fact finder to reach the finding under review. *Id.* at 827.

When reviewing the factual sufficiency on an issue on which the appellant did not have the burden of proof, the appellate court considers and weighs all of the evidence in a neutral light, and may set aside the judgment only if the evidence that supports the challenged finding is so weak as

---

[3] There is disagreement among the intermediate appellate courts as to the proper standard of review to be applied in appeals from protective orders. Some courts have held that because a protective order provides relief similar to that provided by an injunction, the proper standard of review is abuse of discretion, but other courts have applied legal and factual sufficiency standards of review. *Compare, e.g., In re Epperson*, 213 S.W.3d 541, 542-43 (Tex. App.—Texarkana 2007, no pet.) (applying abuse of discretion standard of review) *with, e.g., Pena v. Garza*, 61 S.W.3d 529, 532 (Tex. App.—San Antonio 2001, no pet.) (applying legal and factual sufficiency standards of review). In *Pena*, this court applied legal and factually sufficiency standards, and in this case, Kevin has briefed his issues using those standards of review. Accordingly, we will apply legal and factual sufficiency standards in our review of the trial court's findings.

to make the judgment clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). Although the evidence is reviewed in a neutral light, the reviewing court may not impose its opinion so as to displace the fact finder's credibility determinations. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

In reviewing the sufficiency of the evidence, legal and factual, the appellate court must be mindful that the trial court, as fact finder, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See City of Keller*, 168 S.W.3d at 819. The trial court, as fact finder, may believe one witness, disbelieve others, and resolve any inconsistencies in any witness's testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986). The appellate court may not substitute its judgment for that of the fact finder even if it would reach a different finding based on the evidence. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.3d 402, 407 (Tex. 1998).

*Past Family Violence*

The Texas Family Code includes three definitions of "family violence." *See* TEX. FAM. CODE ANN. § 71.004 (Vernon 2008). Based on the trial court's findings and the evidence, the following definitions of family violence are relevant here:

> (1) [A]n act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, or assault, or sexual assault, or that is a threat that reasonably placed the member in fear of imminent physical harm, bodily injury or assault; and
>
> (2) [A]buse, as that term is defined by Sections 261.001(1)(C), (E), and (G) by a member of a family or household toward a child of the family or household[.]

*Id.* § 71.004(1), (2). As it pertains to this case, section 261.001(1)(E) defines "abuse" as "sexual conduct harmful to a child's mental, emotional, or physical welfare, including conduct that

constitutes the offense of . . . indecency with a child under Section 21.11, Penal Code." *Id*. § 261.001(1)(E). A person commits the offense of indecency with a child if, with a child younger than seventeen years, a person "engages in sexual contact with the child or causes the child to engage in sexual contact[,] or with the intent to arouse or gratify the sexual desire of any person: exposes . . . any part of the person's genital, knowing the child is present[,] or causes the child to expose . . . any part of the child's genitals." TEX. PENAL CODE ANN. § 21.11(a) (Vernon Supp. 2009). "Sexual contact" includes touching any part of the genitals of another person with intent to arouse or gratify any person. *Id*. § 21.01(2).

The trial court found Kevin touched Tony's genitals, Kevin made Tony watch Kevin masturbate, and Kevin made Tony touch Kevin's genitals. These findings are supported by the evidence, and Kevin failed to provide any actual controverting evidence.

Mother testified Kevin "sexually molested" Tony, specifically stating Tony said Kevin touched his "boe-boe", i.e., penis. She also testified Tony said Kevin taught him to masturbate, making Tony watch him, and forcing Tony to watch when he tried to look away. According to Mother, Tony said Kevin threatened him with physical violence if Tony told Mother. Kevin popped a white belt in front of Tony, and said he would "whip [Tony's] ass if he told. Tony testified Kevin exhibited his penis, and it made Tony "feel very bad" and Tony "wanted it to go away." According to Tony, Kevin "kept showing [his penis] to me."

This evidence supports the trial court findings, and its conclusion that family violence, as defined in section 71.004(2), had occurred. Kevin clearly engaged in sexual conduct with Tony that was, at a minimum, harmful to Tony's mental and emotional well-being. *See* TEX. FAM. CODE ANN. § 261.001(1)(E). Moreover, there was evidence to support a finding that Kevin committed the

-8-

offense of indecency with a child by engaging in sexual contact with Tony, causing Tony to engage in sexual contact, and exposing himself to Tony with the intent to arouse or gratify himself. *See id.*; TEX. PENAL CODE ANN. § 21.11

Father testified there was only one night where Tony slept with Kevin rather than in Father's room. This testimony does not provide any evidence that Tony did not commit family violence; rather, it shows Kevin had an opportunity to abuse Tony. Grandmother controverted Tony's claim that he told her about the abuse and spanked Kevin for it. Father and Grandmother both testified they could not believe Kevin would molest Tony, but both admitted they did not know what happened.

Considering the evidence in the light most favorable to the trial court's finding, we hold the evidence was sufficient to enable a reasonable and fair-minded fact finder to find family violence had occurred. *See City of Keller*, 168 S.W.3d at 827. And, even when the evidence is considered in a neutral light, we cannot say the evidence in support of the family violence finding is so weak as to make the judgment clearly wrong and manifestly unjust. *See Cain*, 709 S.W.2d at 176. Accordingly, we overrule Kevin's second issue.

*Future Family Violence*

Kevin also complains about the sufficiency of the evidence to support the trial court's finding that family violence is likely to occur in the future. We begin by noting Texas law, in the context of protective orders, recognizes that evidence showing a person has engaged in abusive conduct in the past permits an inference that the person will continue such conduct in the future. *See, e.g., In re Epperson*, 213 S.W.3d 541, 543-44 (Tex. App.—Texarkana 2007, no pet.); *In re T.L.S.*, 170 S.W.3d 164, 166 (Tex. App.—Waco 2005, no pet.); *Pena*, 61 S.W.3d at 532. As noted in *Epperson*,

"Often times, past is prologue; therefore, past . . . conduct can be competent evidence which is legally and factually sufficient to sustain the award of a protective order." 213 S.W.3d at 544.

We have already discussed the evidence establishing Kevin committed family violence in the past. This past violence permits an inference that Kevin will engage in such conduct in the future. Moreover, Mother testified Kevin threatened Tony, telling Tony that if Tony told Mother about the sexual abuse, the next time Tony returned to Father's house, Kevin would "whip his ass." When Kevin made this threat, he was holding a belt in front of Tony and popping it. This suggests Kevin has already contemplated future violent action against his half-brother.

Father, when asked if he felt he could protect Tony, stated he could. However, this is not evidence that Kevin will not commit future family violence, only that Father would protect Tony from it. Father admitted Kevin has issues with obeying Father's instructions, has trouble with authority figures, repressed anger, and has been seeing a psychologist for more than a year–beginning *before* the incident with Tony occurred. Grandmother testified Kevin has been taking Zoloft every day for more than a year. Moreover, Father admitted that he would not require Kevin to move out, just that he would ensure Kevin was absent during Tony's visits.

Based on the foregoing, whether viewed in the light most favorable to the future violence finding or in a neutral light, the evidence is sufficient to support the trial court's finding. We therefore overrule Kevin's third issue.

### CONCLUSION

Based on the foregoing, we overrule Kevin's issues and affirm the trial court's judgment.

Marialyn Barnard, Justice