In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00037-CV

                                                ______________________________

 

 

                                 DANNY WAYNE MARTIN,
Appellant

 

                                                                V.

 

                                  AMANDA JOANN PARRIS, Appellee

 

 

                                                                                                  


 

 

                                      On Appeal from the 102nd
Judicial District Court

                                                          Red
River County, Texas

                                                          Trial Court
No. CV01804

 

                                                    
                                              

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                     MEMORANDUM 
OPINION

 

            Danny
Wayne Martin appeals from a final protective order entered in favor of his
ex-girlfriend Amanda JoAnn Parris after a finding of family violence.  In his pro se appeal, Martin complains that
the trial court erred in “dismiss[ing]” the public defender from representing
him in the underlying civil proceeding. 
Martin alleges that lack of counsel forced him to violate his Fifth
Amendment rights and that the Equal Protection Clause of the United States
Constitution was violated because he was not “treated the same as those
similarly situated.”  He also complains
that the evidence was factually insufficient to support the issuance of the
protective order, that the trial judge was biased, and that the trial court
committed the following alleged errors: 
(1) failing to orally pronounce that family violence was likely to occur
in the future; (2) holding Martin in contempt of court; (3) failing to limit
the opposing party’s questioning; and (4) admitting evidence where “there was
no proper foundation.”  We affirm the trial
court’s judgment. 

I.          Expiration of the
Protective Order Does Not Render this Appeal Moot 

            Appellate
courts decide only those issues in which a controversy exists.  Camarena
v. Tex. Employment Comm’n, 754 S.W.2d 149, 151 (Tex. 1988).  The final protective order in this case
expired by its own terms on August 12, 2010. 
We must first address whether the expiration of the protective order has
rendered this case moot before we examine the merits of Martin’s claim.  Clements
v. Haskovec, 251 S.W.3d 79, 83 (Tex. App.––Corpus Christi 2008, no pet.); State for the Protection of Cockerham v.
Cockerham, 218 S.W.3d 298, 302 (Tex. App.––Texarkana 2007, no pet.). 

            “The
general rule is that a case becomes moot, and thus unreviewable, when it
appears that a party seeks to obtain relief on some alleged controversy when in
reality none exists.”  Schaban-Maurer v. Maurer-Schaban, 238
S.W.3d 815, 822 (Tex. App.––Fort Worth 2007, no pet.) (citing Williams v. Lara, 52 S.W.3d 171, 184
(Tex. 2001)); Cockerham, 218 S.W.3d
at 301.  Texas law does recognize a “collateral
consequences” exception to the mootness doctrine.  Fed.
Deposit Ins. Corp. v. Nueces County, 886 S.W.2d 766, 767 (Tex. 1994); Cockerham, 218 S.W.3d at 302.  The “collateral consequences” exception is
only invoked under “narrow circumstances when vacating the underlying judgment
cannot cure adverse consequences suffered by” the appellant.  Marshall
v. Housing Auth. of City of San Antonio, 198 S.W.3d 782, 789 (Tex.
2006).  Such narrow circumstances exist
when “as a result of the judgment’s entry (1) concrete disadvantages or
disabilities have in fact occurred, are imminently threatened to occur, or are
imposed as a matter of law; and (2) the concrete disadvantages and disabilities
will persist even after the judgment is vacated.”  Id.;
see Gen. Land Office of the State of Tex. v. OXY U.S.A., Inc., 789
S.W.2d 569, 571 (Tex. 1990) (noting collateral consequences exception is
invoked only when prejudicial events occurred whose effects will continue to
stigmatize after dismissal of case as moot).

            “Appeals
of expired protective orders issued for family violence often fall into this ‘collateral
consequences’ exception because although such orders may ultimately expire, the
stigma attached to them generally does not.”  Clements,
251 S.W.3d at 84; see Schaban-Maurer,
238 S.W.3d at 822–23; Cockerham, 218
S.W.3d at 303.  This stigma is not only a
social burden; there are also “attendant legal consequences to being the
subject of such a protective order.”  Schaban-Maurer, 238 S.W.3d at 822–23 (noting
courts consider a history of domestic violence when judging child
conservatorship) (citing Tex. Fam. Code
Ann. § 153.004(f) (Vernon 2008)). 
For example, the Texas Family Code requires that information in a
protective order be entered into the state-wide law information system “where
it presumably remains for various purposes.”  Amir-Sharif
v. Hawkins, 246 S.W.3d 267, 270 (Tex. App.––Dallas 2007, pet. dism’d
w.o.j.); see Tex. Fam. Code Ann. § 86.0011 (Vernon 2008).  In Cockerham,
we noted there could be other possible legal consequences that could occur
should the appellant be convicted of other criminal acts.  Cockerham,
218 S.W.3d at 303.[1]  Thus, we find that the collateral
consequences exception to the mootness doctrine applies in this case.  Because the expiration of the protective
order does not render this appeal moot, we may consider the merits of Martin’s
claims.  Id. at 303–04. 

II.        Sufficient Evidence
Supported the Trial Court’s Judgment

            Martin complains
the court’s judgment was “contrary to the evidence and findings at trial.” 

            A.         Standard of Review 

            Because a protective order provides
injunctive relief, we apply the standard of review that is applied when
reviewing injunctions.  In re Epperson, 213 S.W.3d 541, 542
(Tex. App.––Texarkana 2007, no pet.). 
Thus, we review the trial court’s grant of the protective order against
Martin for abuse of discretion.  Id. at 543 (citing Operation Rescue-Nat’l v. Planned Parenthood of Houston & S.E.
Tex., Inc., 975 S.W.2d 546, 560 (Tex. 1998)).  “A trial court abuses its discretion if it
acts without reference to any guiding rules and principles or reaches a
decision so arbitrary and unreasonable as to amount to a clear and prejudicial
error of law.”  Id. (citing Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241–42 (Tex. 1985)).

            B.         Factual Background 

            Martin
was the father of one of Parris’ two young children.  He was incarcerated prior to the incidence of
alleged family violence that prompted Parris’ petition for a protective
order.  Parris testified at the hearing
that Martin wrote threatening letters to her while in prison.  Martin moved to Paris, Texas, after his
release.  

            Parris
testified Martin “just walked into” her house one afternoon “drinking a
Budweiser beer . . . . And he told me, he said, ‘You’ve got two choices . . . .
You can either pack the kids up and come with me to Paris for a couple of
weekends -- or for a couple of days, or you can die right here.’”  Parris refused to leave with the kids.  She testified Martin “just yanked me up by
the neck and my hair and took me in the kitchen and slammed me up against the
kitchen counter and got a knife.”  Martin
held the knife to Parris’ throat, but allowed her to attend to her younger
daughter when she started crying.  Parris
comforted her child while begging Martin to leave.  Again, Martin held the knife to Parris’
throat.  The act was witnessed by Parris’
eldest daughter.  With both children by
her side, Parris “told him to stop,” insisted, “I’m not going anywhere with
you,” and begged Martin to leave.  

            At
some point when Martin turned to make a telephone call, Parris testified she “just
took off running out the door, screaming for help.  And he came out, running after me, and he
yanked me by the back of my hair and he dragged me back into the house.”  Martin had noticed that there were two
witnesses outside, and assumed they would call the police.  He slapped Parris and instructed her and the
children to hide in the back room of the house. 
The police arrived shortly thereafter. 
Parris testified she “was wanting to scream for help but he was telling
me no, to be quiet, and I was just holding my kids close to me so that nothing
would happen to them.”  After the
officers left, Martin said he would let Parris live if she did not call the
police, but would kill her if she did.  

            As
far as the nature of their prior relationship, Parris testified Martin “would
either get drunk and I would always go find him, try to bring him home.  And then when he would get home, he would
either throw me around, call me a stupid b****, or he would slap me.  He would pull me by my hair.  He would make me have sex with him when I
didn’t want to.”  

            Martin
testified on his own behalf.  He claimed
that he witnessed Parris molesting his daughter, went to call the police, and
that Parris “come at me with a knife.” 
He admitted to previous abuse, but stated he would only slap her after
she slapped him first.  

            After
hearing the evidence, the trial court found

that the respondent in this matter, Mr. Danny
Martin, has in fact engaged in family violence on the date in question, as well
as prior occasions, and a family relationship has existed as provided in the
family code that is protected against violence. 
Having found that there have been acts of family violence perpetrated
against the movant, Amanda Parris, this Court now hereby enters a protective
order in favor of Ms. Parris against Mr. Martin at whichever time he may be
released from custody.

 

            C.        Analysis 

            A trial court
shall render a protective order “if the court finds that family violence has
occurred and is likely to occur in the future.” 
Tex. Fam. Code Ann. §
81.001 (Vernon 2008). “Family violence” includes “dating violence,” which
means:

an act by an individual that is against another
individual with whom that person has or has had a dating relationship and that
is intended to result in physical harm, bodily injury, assault, or sexual
assault or that is a threat that reasonably places the individual in fear of
imminent physical harm, bodily injury, assault, or sexual assault, but does not
include defensive measures to protect oneself.

 

Tex.
Fam. Code Ann. §§ 71.004(3), 71.0021(a) (Vernon 2008).

            Martin
and Parris both testified that they previously engaged in a dating
relationship.  After Parris’ testimony,
Martin’s presentation of contrary evidence came in the form of denials of
actions alleged to have been committed by him, coupled with allegations that
Parris was molesting his daughter.[2]  As finder of fact, the trial court was free
to believe Parris’ testimony and disbelieve Martin’s denials.  City of
Keller v. Wilson, 168 S.W.3d 802, 819 (Tex. 2005).  We conclude that the trial court was within
its discretion, based on Parris’ testimony, to find Martin’s actions in
slamming Parris into the kitchen counter, slapping her, and dragging her by the
hair constituted actions intended to result in physical harm, bodily injury,
and/or assault.  According to Parris,
Martin also held a knife to her throat and threatened to kill her twice––first,
if she did not leave with him and the children, and second, if she informed the
police of his actions.  The trial court
could conclude these acts and threats reasonably placed Parris in fear of imminent
physical harm, bodily injury, and/or assault. 
We find the evidence legally and factually sufficient to support the
trial court’s finding that family violence occurred. 

            Next,
we have stated, “Oftentimes, past is prologue; therefore, past violent conduct
can be competent evidence which is legally and factually sufficient to sustain
the award of a protective order.”  Epperson, 213 S.W.3d at 544.  Parris testified to a history of verbal,
physical, and sexual abuse by Martin during their past relationship, as well as
threats received before and after Martin’s incarceration.  Martin admitted to slapping Parris during
their dating relationship, though apparently in retaliation.  Coupled with the two threats that Martin
would kill Parris, it was reasonable for the trial court to conclude that
Martin would likely commit, or would threaten to commit acts constituting
family violence.  See id.  We find the evidence
legally and factually sufficient to support the trial court’s discretionary
finding that family violence was likely to occur in the future.  Martin’s first point of error is overruled. 

III.       Appealability
and Preservation Issues 

            A.         Martin Did Not Preserve Complaint of
Allegedly Omitted Statutory Findings

            Although the written protective
order specified a finding that family violence was likely to occur in the
future, Martin claims that the trial court erred in failing to make “the
requisite finding at the close of the hearing.” 
See Tex. Fam. Code Ann. § 85.001(a) (Vernon 2008).  Judicial economy requires that a trial court
have the opportunity to correct an error before an appeal proceeds.  In re C.O.S., 988 S.W.2d 760, 765
(Tex. 1999).  “As a prerequisite to
presenting a complaint for appellate review, the record must show that:  (1) the complaint was made to the trial court
by a timely request, objection, or motion.” 
Tex. R. App. P. 33.1.  By failing to object or otherwise raise this
issue below, Martin failed to preserve this error for our review.  See Melton
v. Tex. Dep’t of Family & Protective Servs., No. 03-08-00168-CV, 2010
WL 668917, at *2 (Tex. App.––Austin Feb. 25, 2010, no pet.) (mem. op.). 

            Nevertheless,
prior to the close of the hearing, the court stated, “Under the terms of that
protective order he is to stay five hundred feet away from her, and he is not
going to have access to the children who are also a part of this sui[t], as
this Court feels that Mr. Martin’s conduct will constitute an endangerment to
the children as well as Ms. Parris.” 
Were this point of error preserved, we would construe the court’s
statement as a finding that family violence would likely occur in the future.  This point of error is overruled. 

            B.         Contempt Order Is Not Appealable 

            Martin’s brief summarily states that
the trial court “acted without any guiding rules or principles.”  Our review of the reporter’s record citation
provided reveals that Martin is complaining of an order of contempt entered by
the trial court.  

            During
Martin’s cross-examination, Martin made relevance objections instead of
answering questions asked.  The trial court
attempted to remedy the situation in the following manner:

                        THE
COURT:  
Sir, you answer the questions that are propounded to you. 

 

            A         Well, you
be honorable. 

 

                        THE COURT:   I beg your pardon?

 

            A         I’m asking you to please be honorable. 

 

                        THE COURT:   Sir, you’re in
contempt.  Six months in jail.  That’s the first thing.  Continue.

 

The court explained:

Mr. Martin made a comment to the Court which the
Court deems to be very inappropriate, which to the Court seems to be an attack
upon the integrity of the Court and the judiciary.  This Court is of the opinion that that
constituted an act of direct contempt. 
The Court hereby adjudicated him guilty of direct contempt of this Court
by the responses that have been entered to it or the comments that were made by
Mr. Martin to the Court.  This Court
assessed the punishment at six months’ confinement in the Red River County
jail.

 

In his brief, Martin argues “that
his comment was not an attack as much as it was the ‘truth’, nor does a citizen
need put up with such foulness in its judicial system, nor the trial judge in
question.” 

            We
broadly interpret Martin’s brief as an appeal of the order of contempt.  “Decisions in contempt proceedings cannot be
reviewed through a direct appeal.”  Hatton v. Griar, No. 4-09-00630-CV,
2011 WL 175501, at *2 (Tex. App.––Houston [14th Dist.] Jan. 20, 2011, no pet. h.)
(mem. op.); see Ex parte Williams, 690 S.W.2d 243 n.1 (Tex. 1985); Pandozy v. Beaty, 254 S.W.3d 613, 616
(Tex. App.––Texarkana 2008, no pet.).  “Contempt
orders may only be reviewed through a habeas corpus proceeding or by writ of
mandamus.”  Hatton, 2011 WL 175501, at *2 (citing Metzger v. Sebek,
892 S.W.2d 20, 55 (Tex. App.––Houston [1st Dist.] 1994, writ denied)).  Accordingly, no attempted appeal from the
contempt order in this case will be considered. 

            C.        Issue of Bias Was Not Preserved

            Martin complains
that the trial judge’s findings were the result “of passion, prejudice, and
improper motive” and accuses the judge of “bias and prejudice against” Martin
and “deep seated favortism [sic] towards the State’s attorney.”  A complaint that a trial judge was biased must
generally be preserved in the trial court. 
See Tex. R. App. P. 33.1(a); Dow Chem. Co. v. Francis, 46 S.W.3d 237,
241 (Tex. 2001).  “Preservation is
unnecessary only if the ‘comment cannot be rendered harmless by proper
instruction.’”  In re M.E.C., 66 S.W.3d 449, 459 (Tex. App.––Waco 2001, no pet.) (citing
Francis, 46 S.W.3d at 241). 

            Martin
bears the burden to “explain how any comments made by the trial judge were
incurable or would excuse” the “failure to preserve error.”  Francis,
46 S.W.3d at 241.  “[J]udicial remarks during the course of a
trial that are critical or disapproving of, or even hostile to, counsel, the
parties, or their cases, ordinarily do not support a bias or partiality
challenge.” Liteky v. United States,
510 U.S. 540, 555 (1994).  “A judge’s
ordinary efforts at courtroom administration-even a stern and short-tempered
judge’s ordinary efforts at courtroom administration-remain immune.”  Id. at
556. 

            In
support of this point of error, Martin cites to the order of contempt and the
court’s decisions overruling his relevance objections to questions involving
his place of employment and address during his cross-examination.  Review of the trial judge’s remarks leads us
to conclude they were aimed at explaining his decision to hold Martin in
contempt of court.  The judge’s comment
that “either the responses or the questions asked were not subject to objection”
merely explained the judge’s decisions to overrule Martin’s relevance
objections.  Martin’s brief does not
adequately explain why the judge’s efforts at courtroom administration were
examples of “incurable” bias or prejudice such that he would be excused from
preserving error.  We find that because
Martin did not raise this issue with the trial court, it is not preserved for
our review.  Watson v. Michael Haskins Photography, Inc., No. 10-05-00010-CV,
2005 WL 3148074, at *3 (Tex. App.––Waco Nov. 23, 2005, no pet.) (mem. op.).  

            Had
the point been properly preserved, we would find the trial court’s comments
were not comments on the weight of the evidence, but were procedural
explanations that were within the discretion vested in the trial court during
the conduct of a trial.  Bott v. Bott, 962 S.W.2d 626, 631 (Tex.
App.—Houston [14th Dist.] 1997, no pet.).

            This
point of error is overruled. 

            D.        Martin Did Not Seek Counsel 

            Martin complains
that the trial court committed “fundamental error or ‘plain error’” when it “dismissed”[3]
his attorney.  The record demonstrates
Martin was indigent, that Dan Meehan, a public defender, was appointed to
represent him on criminal charges arising from the incident, and that Meehan
was present to address criminal matters also being heard at the same time as
the hearing on the civil protective order. 
Prior to the civil hearing, the following exchange occurred:

                        THE COURT:             . . . . Mr. Meehan, were you here as the public defender
in these other cases, sir?

 

                        MR. MEEHAN:         On Mr. Martin?

 

                        THE COURT:             Yes. 

 

                        MR. MEEHAN:         I assume I am.  Yes,
sir. 

 

                        THE COURT:             All right, I have notated you as a public defender.  As far as representation in a protective
order, I don’t think that you are obligated as the public defender.  

 

In this case, the trial judge had
the power to appoint counsel for Martin. 
Tex. Gov’t Code Ann. § 24.016
(Vernon 2004)[4]
(“A district judge may appoint counsel to attend to the cause of a party who
makes an affidavit that he is too poor to employ counsel . . . .”).  However, the record demonstrates Martin failed
to request appointment of counsel to represent him in this civil matter.[5]  Had Martin made such a request, we would
review the trial court’s denial for an abuse of discretion.  Hines
v. Massey, 79 S.W.3d 269, 272 (Tex. App.––Beaumont 2002, no pet.).[6]  Because Martin did not request that counsel
be appointed to represent him, he has failed to preserve this issue for our
review.  Hull v. Davis, 211 S.W.3d 461, 466 (Tex. App.––Houston [14th Dist.]
2006, no pet.).[7]  This point of error is overruled.

            E.         Martin Failed to Preserve Equal
Protection Argument

            Martin
summarily alleges that the Equal Protection Clause of the United States
Constitution was violated because he was not “treated the same as those
similarly situated.”  His briefing
reveals that he is not complaining of any error committed by the trial court
with regard to the Equal Protection Clause. 
Rather, he cites to Striedel,
and urges this Court to:  find that the
facts of this case are the same as Striedel,
to hold that he was entitled counsel, and conclude that reversal is necessary
because “Appellant has a right to equal protection of the laws.”  At a minimum, “[a] complaint on appeal must
address specific errors” committed by the trial court.  Cammack
the Cook, L.L.C. v. Eastburn, 296 S.W.3d 884, 889 (Tex. App.––Texarkana
2009, pet. denied).  Because Martin’s
brief does not complain of any act by the trial court, this point of error is
overruled.  

            F.         Martin Failed to Preserve Error
Regarding Lack of Proper Foundation

            Martin claims that he “objected to
the evidence because there was no proper foundation for its admission.”  His record citations demonstrate that while
there was no such objection, the following objections occurred during Parris’
direct examination:

            Q         What kind of knife did he get?

 

            A         A regular kitchen knife. 

 

            Q         How big was it?

 

            .
. . .

 

            Q         Let the record reflect she’s holding up
approximately a six-inch blade . . . .

 

            .
. . .

 

                        THE COURT:  And, Mrs. Collins, the record needs to
reflect that she is demonstrating approximately a six-inch blade.  

 

                        MR. MARTIN:  Objection. 
I don’t see any knife here.  

 

                        THE COURT:  Overruled, sir.  

 

                        MR. MARTIN:  I don’t see any evidence. 

 

                        THE
COURT:  Overruled . . . .

 

            .
. . .

 

            Q         Has he committed acts of violence
against you in the past?

 

            A         Yes, he
has. 

 

                        MR.
MARTIN:  Objection.  No evidence. 

 

                        THE
COURT:  Overruled. 

 

During Parris’ cross-examination,
Martin lodged an objection that “there is no evidence whatsoever at this
hearing, Your honor.”  The remaining
objections dealt with claims of Fifth Amendment privilege and relevance
objections to questions regarding his place of employment and current and past
addresses.  

            It
is well-settled that an objection at trial that does not comport with the
complaint raised on appeal preserves nothing for appellate review.  See
Tex. R. App.
P. 33.1(a); Ibarra v. State,
11 S.W.3d 189, 197 (Tex. Crim. App. 1999). 
Whereas his objections to the trial court were statements that in his
opinion, Parris’ testimony did not constitute evidence, that he was entitled to
assert a Fifth Amendment privilege to questions regarding employment, and that
information about his employment and address were irrelevant, his complaint on
appeal deals with “want of such foundation.”[8]  We conclude that Martin’s objections at trial
do not comport with his point raised on appeal. 
Therefore, the point of error was not preserved, and it is
overruled.  

IV.       Martin’s Fifth Amendment
Assertion of Privilege Was Not Made in Good Faith

            It
is well established that the Fifth Amendment privilege may be asserted in civil
cases where a party reasonably believes his or her answers will be
incriminating.  Tex. Dep’t of Public Safety Officers Ass’n v. Denton, 897 S.W.2d
757, 760 (Tex. 1995); In re Suarez,
No. 14-08-00740-CV, 2008 WL 4310098, at *2 (Tex. App.––Houston [14th
Dist.] Aug. 28, 2008, no pet.).  “The
trial court is to determine whether the assertion of the privilege is in good
faith and is justifiable under the totality of the circumstances.”  In re
Commitment of Lowe, 151 S.W.3d 739, 745 (Tex. App.––Beaumont 2004, pet.
denied).  A court can consider whether the privilege
is being asserted in a bona fide fear of self-incrimination or merely to avoid
discovery or to create delay.  Denton, 897 S.W.2d at 763. 

            The
record contains only one assertion of privilege to the following:

            Q         Okay, and where did you say you were
working, or did you say?

 

            A         That’s really nobody’s business. 

 

            Q         Where you’re working is nobody’s
business?

 

            A         Yes, I work; but no, it ain’t your
business. 

 

            Q         Will you
instruct the defendant -- or the respondent . . .

 

            A         I claim
the Fifth Amendment. 

 

After the trial court overruled
the assertion of privilege, Martin testified he was a self-employed
roofer.  Because we find that a belief
that such an answer would be incriminating was unreasonable and unjustifiable,
we conclude Martin was not entitled to refuse to answer the question based on
an assertion of Fifth Amendment privilege. 
Further, under these circumstances, the trial court could find that the
assertion was not made in good faith. 
This point of error is overruled. 

V.        Trial
Court Did Not Abuse Discretion in Admitting Evidence 

            We apply an abuse of discretion
standard to the question of whether a trial court erred in an evidentiary
ruling.  Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex.
1998) (citing City of Brownsville v.
Alvarado, 897 S.W.2d 750, 753 (Tex. 1995)). 
A trial court abuses its discretion when it rules without regard to any
guiding rules or principles.  Id.  We must uphold the trial court’s ruling if
there is any legitimate basis for its ruling. 
Id.

            Martin
claims that the trial court “abused its discretion by failing to stop the
prosecutor from asking irrelevant questions.” 
We interpret Martin’s argument as suggesting that the trial court erred
in overruling his relevance objections when questioned about his place of
employment and living arrangements.  In
her petition for a protective order, Parris asked the trial court to order that
Martin be prevented from “going to or near” her residence and/or possible place
of employment.  Specifically, Parris
requested that Martin be ordered to maintain a distance of 200 feet.  Thus, the proximity of Martin’s residence and
place of employment were facts the trial court could have considered in
determining the feasibility of the requirement to maintain a certain distance
from Parris.  We find that the trial
court did not abuse its discretion in overruling Martin’s relevance
objections.  Martin’s last point of error
is overruled.  

VI.       Conclusion 

            We
affirm the judgment of the trial court. 

 

                                                                        Jack
Carter

                                                                        Justice

Date Submitted:          February 17, 2011

Date Decided:             March 4, 2011











[1]Further,
the August 20, 2008, protective order in this case ordered that Martin’s
license to carry a concealed handgun be suspended due to the trial court’s
finding of family violence.  Tex. Gov’t Code Ann. § 411.187(a)(5)
(Vernon Supp. 2010).  The normal
expiration period for a concealed handgun license is “the first birthday of the
license holder occurring after the fourth anniversary of the date of issuance,”
a date which has not passed.  Tex. Gov’t Code Ann. § 411.183 (Vernon
Supp. 2010).  





[2]Martin’s
allegation that Parris molested his child was referred to Child Protective Services.  





[3]Because
there is nothing in the record demonstrating Martin had an attorney-client
relationship with any attorney with regard to the civil protective order, we
find that any complaint regarding “dismiss[al]” of his attorney is without
merit.  





[4]Martin
argues that Section 81.007(a) of the Texas Family Code guarantees him right to
counsel in this civil matter.  That
section does not apply.  Section
81.007(a) states, “The county attorney or the criminal district attorney is the
prosecuting attorney responsible for filing applications under this subtitle
unless the district attorney assumes the responsibility by giving notice of
that assumption to the county attorney.” 
Tex. Fam. Code Ann. § 81.007(a) (Vernon
2008). 

 





[5]We
distinguish cases cited by Martin which discuss appointment of counsel when
faced with termination of parental rights or adoption issues.  Lassiter
v. Dep’t of Soc. Servs. of Durham County, N.C., 452 U.S. 18 (1981); Stanley v. Illinois, 405 U.S. 645
(1972); Armstrong v. Manzo, 380 U.S.
545 (1965); May v. Anderson, 345 U.S.
528 (1953).   

 





[6]We
distinguish the case of Striedel v.
Striedel, 15 S.W.3d 163 (Tex. App.––Corpus Christi 2000, no pet.).  In Striedel,
our sister court found that the trial court should have considered appellant’s
request for counsel in a protective order proceeding which affected appellant’s
right to see his child.  Id. at 167.  In Striedel,
appellant had preserved the issue by requesting an attorney to represent
him.  Id.
at 165.  Recognizing this fact, our
sister court clarified “we note, however, that appellant made repeated attempts
in the trial court to raise this issue, all to no avail.  We do not mean to express here any belief that
the right to counsel cannot be waived.”  Id. at 166 n.1. 





[7]Martin
argues that his point of error presents fundamental error that can be addressed
for the first time on appeal. “Fundamental error in a civil case is rare, but
occurs when the record shows that the court lacked jurisdiction or when the
error directly and adversely affects the public interest as that interest is
declared by the statutes and state constitution.”  Matter
of J.G., 905 S.W.2d 676, 680 n.1 (Tex. App.––Texarkana 1995), writ denied, 916 S.W.2d 949 (Tex. 1995)
(per curiam) (citing Pirtle v. Gregory,
629 S.W.2d 919, 920 (Tex. 1982)).  The
record demonstrates the trial court had jurisdiction of the matter, Martin does
not address how his lack of counsel with respect to Parris’ protective order
adversely affected the public interest, and caselaw establishes this error is
one that can be waived.  See Hull, 211 S.W.3d at 466.





[8]There
was no assertion that either Parris or Martin did not have personal knowledge
of their testimony.