

## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00513-CV

ALLEN MAKI                                                              APPELLANT

V.

BEVERLY ANDERSON[1]                                                        APPELLEE

----------

## FROM THE 233RD DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[2]

----------

### I. INTRODUCTION

This is an appeal of a protective order. Appellant Allen Maki, appearing pro se on appeal, argues in a single issue that his rights were violated "when he was prohibited from obtaining compulsory process for preparing and perfecting

---

[1]Due to the nature of this case, we will use a fictitious name in lieu of the victim's name.

[2]*See* Tex. R. App. P. 47.4.

his evidences and consequently his evidences were rendered forever inadmissible." We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Maki met Appellee Beverly Anderson in Morocco in June 2011, and they stayed together for two or three days before Maki returned to the United States. Almost a year later, on June 1, 2012, Beverly arrived in the United States, and they married approximately ten days later.

After they were married, Maki took Beverly to a gynecologist, and she was diagnosed with vaginismus.[3] Maki claims that he never had sexual relations with Beverly and that the marriage was not consummated.

On July 11, 2012, Maki filed a petition to annul his marriage to Beverly, and the following day, he went to the immigration office to report that he was no longer married to Beverly. When he returned home, Beverly was gone.

After Maki had left for the immigration office, Beverly had called the police. When the police arrived, Beverly told them that Maki had shouted at her that he did not want to see her in his house when he returned. Beverly complained of stomach pain and was taken by an ambulance to a hospital where she underwent surgery for an enlarged colon; after she was released from the hospital, she went to live in a shelter.

---

[3]The record reveals that vaginismus is usually related to trauma and causes the muscles in the vagina to involuntarily lock up, preventing penetration.

2

On August 21, 2012, the Tarrant County Criminal District Attorney filed an application for a protective order under Title 4 of the Texas Family Code for the protection of Beverly. In Beverly's affidavit, which the prosecuting attorney attached to the application, she detailed the violence that Maki had inflicted on her after he had decided on July 6 that he would divorce her. She stated that Maki had beaten her up, that he had slapped her so strongly that blood had come out of her mouth, that he had pulled her hair, that he had choked her, that he had screamed and had threatened to kill her, that he had shaken her until she was unconscious, and that he had forced her to have sex with him and had used a pen to penetrate her.

The Honorable Cynthia Mendoza, an associate judge, held a hearing on the application for a protective order. Both Maki and Beverly testified at the hearing. The trial court found (1) that family violence had occurred and is likely to occur again in the future and that the protective order was in the best interest of Beverly, (2) that Maki had committed family violence and that a protective order for the protection of Beverly should be entered pursuant to chapter 85 of the Texas Family Code, and (3) that Maki represents a credible threat to the physical safety of Beverly. Maki appealed the decision of the associate judge.

The Honorable William Harris held a hearing on Maki's request for a de novo review of the associate judge's order and affirmed it.[4]  This appeal followed.

### III. TRIAL COURT PROPERLY GRANTED THE APPLICATION FOR PROTECTIVE ORDER

In his sole issue, Maki argues that his rights were violated "when he was prohibited from obtaining compulsory process for preparing and perfecting his evidences and consequently his evidences were rendered forever inadmissible." Maki makes several arguments under this issue:  (1) that the twenty-eight days between the prosecuting attorney's filing of the application for a protective order and the hearing on the application was not enough time for him to have the conversations between he and Beverly that he had recorded from July 9 through 12 translated from Arabic to English; (2) that the evidence is insufficient to show that he committed family violence and that there is a likelihood that family violence would occur in the future; (3) that, because the case is civil, the prosecuting attorney had no right to request that Maki complete a batterer's intervention program and to deprive him of his right to bear arms; (4) that his retained counsel was ineffective; and (5) that the prosecuting attorney should not have filed for a protective order in the absence of a police report showing family violence.

---

[4]No action was taken on Maki's petition for annulment prior to issuance of the protective order.  After Judge Harris affirmed the protective order, Beverly filed a petition for divorce.

4

## A. Alleged Exclusion of Recordings

Maki testified that he had recorded every single moment that he and Beverly were together from July 9 through 12 because he had seen "very strange changes." Maki argues that the twenty-eight days between the prosecuting attorney's filing of the application for protective order and the hearing on the application for protective order was not enough time for him to have the recorded conversations from July 9 through 12 translated from Arabic to English. The record reveals the opposite. During the hearing before the associate judge, Maki's attorney attempted to direct Beverly's attention to the transcription of the audio of the conversations from July 9 through 12. The prosecuting attorney objected on the basis that the transcription did not state who had done the transcribing and did not indicate that the transcription was accurate. *See* Tex. R. Evid. 1009(a) (stating that a translation of foreign language documents shall be admissible upon the affidavit of a qualified translator setting forth the qualifications of the translator and certifying that the translation is fair and accurate). The trial court offered Maki the opportunity to play the recordings to impeach Beverly, but Maki's attorney stated that it would be "so time consuming." The trial court thereafter allowed Maki to question Beverly about statements made during the recordings, but he was not allowed to impeach her from the transcription.[5] Maki did not attempt to offer the transcription into evidence.

---

[5]During the questioning, Beverly recalled telling Maki at some point that she was not angry with him. Beverly also testified that she did not mention

Because the recordings had been transcribed, because Maki was offered the opportunity to play the recordings, and because Maki was allowed to question Beverly about statements made during the recordings, we hold that Maki was not harmed by the twenty-eight-day time frame between the filing of the application for a protective order and the hearing on the application. *See* Tex. R. App. P. 44.1(a); *Romero v. KPH Consolidation, Inc.,* 166 S.W.3d 212, 225 (Tex. 2005) (stating that to obtain reversal of a judgment based upon an error in the trial court, the appellant must show that the error occurred and that it probably caused rendition of an improper judgment or probably prevented the appellant from properly presenting the case to this court); *see also* Tex. Fam. Code Ann. § 84.001 (West 2008), § 84.002 (West Supp. 2012) (requiring a hearing on an application for protective order within fourteen days and providing that prosecutor may request only a twenty-day extension).

## B.  Sufficiency of the Evidence

Maki argues that the evidence is insufficient to show that he committed family violence and that there is a likelihood that family violence will occur in the future.

---

violence during the thirty minutes of recordings that Maki had made on July 9, 10, 11, and 12; she explained that a day has twenty-four hours and that the recordings do not cover the entire time period.

## 1. Standards of Review

A trial court's findings of fact are reviewable for legal and factual sufficiency under the same standards of review used to review the sufficiency of the evidence supporting a jury's findings. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). In a legal sufficiency review, we review the evidence in the light most favorable to the trial court's findings, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005). So long as the evidence falls within the zone of reasonable disagreement, we may not substitute our judgment for that of the factfinder. *Id.* at 822. In a factual sufficiency review, we consider and weigh all evidence in a neutral light and will set aside the finding only if the evidence is so weak or the finding so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Ortiz*, 917 S.W.2d at 772. We defer to a trial court's factual findings if they are supported by evidence. *Perry Homes v. Cull*, 258 S.W.3d 580, 598 (Tex. 2008), *cert. denied*, 129 S. Ct. 952.

## 2. Findings

The protective order contains the following findings by the trial court:

> The Court finds that family violence has occurred and is likely to occur again in the future and that the following orders are in the

best interest of Applicant and other members of the family or household who are affected by this suit.

The Court finds that Allen Maki, Respondent, has committed family violence. The Court finds that a protective order for the protection of [Beverly Anderson] should be entered pursuant to Chapter 85, Texas Family Code.

The Court finds that Respondent represents a credible threat to the physical safety of the Applicant or other members of the family or household who are affected by this suit.

*See* Tex. Fam. Code Ann. § 85.001(a)–(b) (West Supp. 2012) (setting forth required findings); *see also Pena v. Garza*, 61 S.W.3d 529, 531–32 (Tex. App.—San Antonio 2001, no pet.) (holding that trial court was not required to make additional findings because the protective order included the required findings listed in section 85.001).

### 3. Testimony before Associate Judge

Beverly testified through an interpreter and detailed the abuse inflicted upon her by Maki. Beverly testified that Maki had pushed and shoved her almost every day; that it had caused her pain; that two times she had fallen; and that during one of the falls, her knee had hit a chair and had caused her pain. Beverly testified that Maki had tried to hit her. Beverly did not take pictures of any bruises.

Between July 9 and 10, 2012, Maki "increased the beating"; he sexually attacked Beverly and tried to grab her hair and push her. During the last week that Beverly lived with Maki, he sexually attacked her on Monday and Wednesday. Beverly testified that Maki had been watching sex movies and that

8

he had used a pen and his finger to penetrate her, applying what he had seen in the movies. Beverly said that this caused her pain and bleeding. Beverly testified that the second time he tried to penetrate her, he attempted to use a cucumber and a carrot, but she refused to allow him to use those.

More than once during the last week that they lived together, Maki tried to grab Beverly's hair. On the last day that they lived together, Maki was successful in grabbing Beverly's hair from the back, and it caused her pain.

Beverly testified that she had lost consciousness on two occasions: once when Maki was beating her up and screaming in her face and on the last day when he kicked her out of the house.

On the last day, Maki shouted at Beverly that he did not want to see her in his house when he returned. Beverly called the police. Two police officers came to the house. An interpreter was available over the phone. Beverly did not show the police any physical injuries. She complained that her stomach had been hurting her for a week, and an ambulance took her to the hospital, where she underwent surgery for a swollen colon.[6] After she was released from the hospital, she did not return to Maki's home; she went to live at a shelter.[7]

---

[6]Beverly intimated that this condition was due to the food that Maki was feeding her. Beverly testified that she does not drive and that she does not work, so she had no way to buy food for herself.

[7]Beverly was still living in a shelter at the time of the hearing on the application for protective order.

Beverly testified that Maki had called her brother and sister and had told them that if Beverly fights, he will fight. Beverly testified that Maki had not contacted or e-mailed her since July 12.

Beverly testified that she needed to be protected from Maki and that she was scared of Maki because he said that nobody could stand in his way.

Maki began his testimony by stating that the interpreter did not interpret Beverly's answers accurately. Maki then testified that he had never struck Beverly, that he had never choked her, that he had never pulled her hair, that he had never made her bleed, that he had never done anything to make her afraid of him, and that he had tried everything to make her comfortable. Maki testified that he had never sexually assaulted Beverly and that he and Beverly did not have sexual relations.[8] He never saw bleeding or bruises on Beverly, and she never accused him of doing anything to her to cause bleeding or bruises. Maki testified that the police have not accused him of any crime and that no charges have been filed against him.

Maki testified that he and Beverly had mutually agreed to separate but that Beverly had changed her mind when he told her that he was going to the immigration office to report her. Maki believed that it was his duty to report that she was no longer his wife. Maki testified that he did not tell Beverly to get out of his house; he said that would have been against his interest because he had

_____

[8]Maki testified that he took Beverly to the doctor but that she did not follow the doctor's recommendation.

10

gone to the immigration office to report her, and they needed to be able to find her.

Maki testified that he has a phone number for Beverly but that he has never called her since she left on July 12; he does not know where she lives. Maki testified that Beverly has no reason to fear him.

### 4. Testimony at De Novo Hearing before Judge Harris

The prosecuting attorney offered the record from the hearing before the associate judge as Beverly's prima facie case.

Maki testified that he had never contacted Beverly after she had left but that he had made calls to Beverly's family to locate her after he had returned home and had found that she was gone. Maki said that he had never threatened Beverly, that there was no evidence on her of any physical violence by him, and that she has no reason to fear him because he does not know where she lives, other than at a shelter. Maki testified that Beverly had the motivation to claim family violence because it would remove the immigration condition from her green card and because she had deceived him about marrying a virgin, causing him to give a larger dowry.

The police report from July 12, 2012, was admitted into evidence. The miscellaneous incident report states, "Subject was told by husband to get out of house," and, "You better be gone when I get home or else." The report states that Maki took all of Beverly's identification and tore up her clothing on July 11, that there is a gun in the residence, and that there has been previous physical

11

abuse but just verbal abuse occurred on July 12. The report notes, "There was no physical abuse on this date, but [Beverly] has no money or family in this country," and there was "no criminal offense at this time."

In rebuttal, the prosecuting attorney called nurse practitioner Shelagh Brown Larson. She testified that she had diagnosed Beverly with vaginismus on June 28, 2012. She said that Maki was present during the entire exam, that he was very aggressive toward Beverly during the exam, and that Beverly did not talk at all during the exam. Larson did not see any bruises on Beverly. Larson said that Maki wanted her to fix the fact that he could not penetrate Beverly's vagina. Larson instructed Maki to use only a finger with lubrication to try to massage the area and then referred them to a doctor and a physical therapist.

### 5. Sufficient Evidence Supports Findings

Although there was contradictory testimony at trial, the trial court evidently believed Beverly's testimony regarding the family violence that she had endured from Maki and did not believe Maki's testimony that he had not committed any family violence toward Beverly. The factfinder is free to reject or accept all or part of a witness's testimony. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). And although Maki argues that there is no evidence that family violence would occur in the future, the record contains evidence of his past conduct; according to Beverly, Maki's violence toward her began immediately after they were married and was ongoing—they had no other type of relationship. Texas law recognizes that evidence showing that a person

12

has engaged in abusive conduct in the past permits an inference that the person will continue such conduct in the future. *See In re Epperson*, 213 S.W.3d 541, 544 (Tex. App.—Texarkana 2007, no pet.); *Dennis v. Rowe*, No. 02-10-00288-CV, 2011 WL 3546618, at *4 (Tex. App.—Fort Worth Aug. 11, 2011, no pet.) (mem. op.).

Viewing the evidence in the light most favorable to the trial court's findings, we conclude that the evidence is legally sufficient to establish that Maki had engaged in family violence against Beverly and will likely do so in the future. And the evidence supporting the trial court's findings is not so weak or so contrary to the overwhelming weight of all the evidence that the trial court's decision was clearly in error. We therefore hold that the evidence is legally and factually sufficient to support the trial court's findings in the protective order. *See Pena*, 61 S.W.3d at 532; *see also Marable v. Marable*, No. 02-11-00476-CV, 2012 WL 2428517, at *4 (Tex. App.—Fort Worth June 28, 2012, no pet.) (mem. op.); *Warren v. Earley*, No. 10-10-00428-CV, 2011 WL 3850035, at *3 (Tex. App.—Waco Aug. 31, 2011, no pet.) (mem. op.) (all holding evidence legally and factually sufficient to support family violence findings). We overrule Maki's argument regarding the sufficiency of the evidence.

## C. Requirements to Complete a Batterer's Intervention Program and to Not Possess Firearms

Maki argues that the prosecuting attorney could not request and that the trial court could not require Maki to complete a batterer's intervention program or

13

limit his right to bear arms. Texas Family Code section 85.022 specifically authorizes a trial court to order a person who is found to have committed family violence to complete a batter's intervention program and to prohibit a person who is found to have committed family violence from possessing a firearm. *See* Tex. Fam. Code Ann. § 85.022(a)(1)–(3), (a-1), (b)(6) (West Supp. 2012). Because the trial court was authorized by statute to add these conditions to Maki's protective order, we overrule Maki's arguments to the contrary. *See id.*

### D. Alleged Ineffective Assistance of Counsel

Maki argues that his retained trial counsel provided ineffective assistance. The doctrine of ineffective assistance of counsel does not apply to civil cases when there is no constitutional or statutory right to counsel. *See, e.g.*, *McCoy v. Tex. Instruments, Inc.*, 183 S.W.3d 548, 553 (Tex. App.—Dallas 2006, no pet.) (stating that doctrine of ineffective assistance of counsel does not extend to civil cases); *In re V.G.*, No. 04-08-00522-CV, 2009 WL 2767040, at *12 (Tex. App.—San Antonio Aug. 31, 2009, no pet.) (mem. op.) (holding that parent who retained counsel in parental rights termination case was not entitled to raise ineffective assistance of counsel claim). Maki has not cited any authority for the proposition that there is a constitutional or statutory right to counsel in a protective order case, and we are not aware of any. *See Culver v. Culver*, 360 S.W.3d 526, 535 (Tex. App.—Texarkana 2011, no pet.); *see also Turner v. Roberson*, No. 05-11-01272-CV, 2013 WL 2152636, at *4 (Tex. App.—Dallas May 17, 2013, no pet.)

14

(mem. op.). We overrule Maki's argument that the protective order should be reversed based on his allegations of ineffective assistance of counsel.

### E. Application for Protective Order Has No Prerequisite of Police Report Showing Family Violence Had Occurred

Maki argues that because the July 12 police report states that there was "no criminal offense at this time," the prosecutor should not have filed for a protective order. Maki relies on Texas Code of Criminal Procedure article 5.06(b) which provides,

> A prosecuting attorney's decision to file an application for a protective order under Chapter 71, Family Code [Protective Orders and Family Violence], should be made without regard to whether a criminal complaint has been filed by the applicant. A prosecuting attorney *may* require the applicant to provide information for an offense report, relating to the facts alleged in the application, with a local law enforcement agency.

Tex. Code Crim. Proc. Ann. art. 5.06(b) (West 2005) (emphasis added). Nothing in this statute or the other statutes dealing with protective orders requires the existence of a family violence offense report before a prosecuting attorney may file an application for a protective order. *See* Tex. Fam. Code Ann. § 82.004 (West 2008), § 84.002 (West Supp. 2012). There is thus no statutory requirement barring the prosecuting attorney from filing an application for a protective order under the circumstances presented here. *See Amir-Sharif v. Hawkins*, 246 S.W.3d 267, 272 (Tex. App.—Dallas 2007, pet. dism'd w.o.j.) (rejecting contention that protective order was erroneous because although victim testified concerning instances of violence, no police records, photographs,

15

or medical testimony were introduced to corroborate her testimony).   Moreover, as set forth above, the evidence—in the absence of any family violence offense report—is legally and factually sufficient to support the protective order.   We therefore overrule Maki's argument relating to his interpretation of article 5.06(b).

Having overruled each of the arguments that we can discern from Maki's appellate briefs as being presented in connection with his sole issue, we overrule Maki's sole issue.[9]

## IV. CONCLUSION

Having overruled Maki's sole issue, we affirm the trial court's judgment.


PER CURIAM

PANEL:  WALKER, MEIER, and GABRIEL, JJ.

DELIVERED:  August 15, 2013

---

[9]To the extent that the sole issue in Maki's brief may be construed as raising any additional arguments not set forth above, we overrule them as inadequately briefed.  *See* Tex. R. App. P. 38.1; *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (observing that error may be waived by inadequate briefing).